In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2079

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEE F. KIBLER, also known as SHORTY,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98 CR 40005--J. Phil Gilbert, Judge.

ARGUED APRIL 19, 2001--DECIDED FEBRUARY 1, 2002


  Before FLAUM, Chief Judge, HARLINGTON
WOOD, JR., and ROVNER, Circuit Judges.

  ROVNER, Circuit Judge.  Lee F. Kibler was
indicted by a grand jury on one count of
conspiracy to distribute and possess
cocaine base with intent to distribute,
in violation of 21 U.S.C. sec.sec.
841(a)(1) and 846, and on two counts of
possession of cocaine base with intent to
distribute, in violation of 21 U.S.C.
sec. 841(a)(1). A jury found him guilty
on all three counts, and the court
sentenced him to life imprisonment on the
conspiracy count, and to 360 months on
each of the remaining counts to be served
concurrently.

  The trial testimony demonstrated that
Kibler operated an automobile detailing
shop in Mount Vernon. In a bedroom above
the shop, Kibler weighed and packaged
crack cocaine, and he also used the
bedroom to trade crack cocaine for sex
with a number of female customers. In
addition, he traded crack cocaine for
food stamps, sold it for cash, and
fronted it to others who would sell it
and then return cash to him. The
testimony included recordings from two
"controlled buys," in which Zelman
Johnson, a confidential source working
for law enforcement, arranged and
completed purchases of crack from Kibler.
In addition, a number of other witnesses

testified as to their transactions with Kibler.

Kibler alleges that his due process right to a fair trial was violated by the introduction of evidence regarding prior convictions, uncharged offenses, and irrelevant immoral behavior. We take each allegation in turn.

Kibler concedes that he made no objection at trial to evidence regarding his prior convictions, and that his defense counsel in fact made no effort to limit the facts of his prior convictions from reaching the jury. Accordingly, our review is limited to plain error. Error under that standard is reversible only if it is "plain," meaning clear under current law, and if it affects substantial rights, in that it must be prejudicial and must have affected the outcome of the district court proceedings. United States v. Olano, 507 U.S. 725, 734 (1993); United States v. Williams, ___ F.3d ___, 2001 WL 1443900, *9 (7th Cir. 2001); Fed. R. Crim. Proc. 52(b). If the defendants can make that showing, the court of appeals has the discretion to correct the forfeited error under Rule 52(b), but "the court should not exercise that discretion unless the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 732.

At a number of points in the trial, various witnesses alluded to Kibler's prior incarceration. Generally, it arose in the context of establishing either a timeline of events, or in establishing the relationship between Kibler and the witness. For instance, an initial reference came during the direct testimony by Chris Mendenall, the Chief of Police of the Mount Vernon Police Department. Mendenall testified that Kibler made a statement after his arrest in which he declared that he started selling crack when he got out of prison in 1996. Similarly, government witness Manuel Vernell Berry, when asked on direct examination if he met with Kibler when he was in Mount Vernon, stated that Kibler was incarcerated until around 1996, and that he saw him after that time. Other witnesses alluded to the incarceration in the course of explaining a relationship with Kibler or an event

involving Kibler. For instance, government witness Zelman Johnson testified that he had the same parole officer as Kibler, and that the officer's presence at the detail shop when Kibler and Zelman were both there had caused Kibler to get everyone together and decide to shut the shop down for a while. Finally, government witness Fred Goosby testified that he first met Kibler when they were both in the penitentiary in 1990. Kibler's defense counsel objected to the follow-up question by the prosecutor, in which Goosby stated that Kibler was in the penitentiary "for drugs," and the court sustained that objection.

We need not discuss whether it was error to allow the witnesses to reveal Kibler's prior incarceration in those contexts, because even assuming it was error, it cannot rise to the level of plain error. The defense in this case was not premised on denying Kibler's involvement with crack cocaine. Kibler presented no witnesses in rebuttal of the government's case. Instead, the theory of the defense was that Kibler could not be guilty of conspiracy, because the government could not prove the agreement with two or more persons that was essential to the conspiracy charge. The defense counsel made clear that the trial strategy was to rebut the existence of an agreement in both his opening and closing statements to the jury, and in his insistence on the buyer-seller instruction. That instruction, based on United States v. Thomas, 150 F.3d 743 (7th Cir. 1998), admonished the jury that the existence of a simple buyer-seller relationship between Kibler and another person, without more, was insufficient to establish a conspiracy, even where the buyer intended to resell the crack cocaine.

The evidence of the prior convictions, however, had virtually no impact on that defense. The evidence that Kibler was a seller of crack was overwhelming, and the defense strategy was a concession to that reality. Therefore, we are not faced with a situation in which a defendant denies all illegal activities, and the prior convictions render that denial less believable. There was no evidence introduced indicating that those prior convictions were for a drug conspiracy, as opposed to individual actions as a seller. Therefore, the prior convictions

were consistent with the defense strategy of portraying Kibler as a drug dealer who operates independently, rather than as part of a conspiracy. Moreover, a limiting instruction was given admonishing the jury that it could not consider his prior incarceration as evidence of guilt of the crimes for which Kibler was charged. We assume that jurors follow the court's instructions, unless there is substantial evidence to the contrary. United States v. Williams, 216 F.3d 611, 615 (7th Cir. 2000); United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1996). There is no reason here to believe that the jury did not heed that instruction. Kibler failed to identify any manner in which the prior conviction evidence prejudiced his defense of no conspiracy, nor has he demonstrated that the prior convictions affected the outcome of the proceedings in this case.

Kibler next challenges the introduction of evidence relating to uncharged criminal conduct, specifically testimony that Kibler had "put out a hit" on another person, which was elicited by the government on direct examination of Manuel Vernell Berry as follows:

Q. Do you recall something that happened to you that led you to believe that someone was out to kill you?

MR. STOBBS [defense counsel]: Judge, I'm going to object to this being irrelevant.

THE COURT: Overruled.

A. Uh, the FBI agent stopped my--

MR. STOBBS: Objection. Hearsay.

Q. Well, I don't want you to tell me what--

THE COURT: Sustain that.

Q. I don't want you to tell us what the FBI agent told you. But you were advised of some information?

MR. STOBBS: Well, if he is advised of some information, that's hearsay.

MR. MOORE: We're not going to get into the information, Judge; just what he did afterwards.

THE COURT: All right.

Q. You were advised of some information, without getting into the information; is that correct?

A. Yes, sir.

Q. Once you were advised of that information, what did you do?

A. I went to Mr. Kibler..

. . . Q. And what did you say to Mr. Kibler?

A. I told him I had been told, you know, that he is supposed to have a hit put out on me.

Q. When you told Kibler that you'd been advised that there was a hit out on you by Kibler, what did Kibler say to you?

A. He just laughed about it, and he didn't say one way or the other.

Transcript 4 at pp. 94-95. Berry then went on to testify that he was not doing business with Kibler at that time, but that after he confronted Kibler about the alleged hit, they began doing business together again.

   The government argues that the introduction of the evidence was not error because Berry "merely used the con versation as a reference marking the end of an eight month hiatus in his drug relationship with the defendant." It also argues that we should review only for plain error, because Kibler failed to properly object.

   Although Kibler objected to the initial question concerning the hit, he did so only on grounds of relevance. He did not renew that objection to the later questions, in which Berry was asked about his conversations with Kibler, and he never argued that the evidence was unduly prejudicial, and should be excluded on that ground. It is that argument, based on Rule of Evidence 404(b), that he makes on appeal, and we review that for plain error.

   Once again, assuming error, Kibler cannot demonstrate that admission of that

evidence was prejudicial and must have affected the outcome of the district court proceedings. Kibler's own counsel had in fact elicited testimony earlier in the trial which indicated that Kibler might be capable of being involved in murder, when cross-examining Zelman Johnson as follows:

Q. Did you know that Lee Floyd [Kibler] was some sort of a target before you went to talk to Chris Mendenall?

A. No. See, they never asked--the reason Lee Floyd, the reason I got hooked up with Lee Floyd was because he was telling me about a murder that he wanted to do. I went to my parole officer and told my parole officer about it, and my parole officer called Mt. Vernon Police Department and federal and told them I was scared, blah, blah, blah, and I came to them because I was on parole, and that's how I got to know--that's how we bought the dope from Lee Floyd.

Transcript 3 at p . 197. In light of that testimony, the testimony later elicited by the government may actually have been helpful, because it made the allegation of Kibler ordering a "hit" appear to be laughable. In contrast to Zelman, Berry did not appear to be frightened by the alleged threat given that he went to speak to Kibler about it. Kibler's reaction in laughing off the allegation, and the resumption of drug transactions between Berry and Kibler, cast doubt upon the credibility of the "hit" allegation. Therefore, any prejudice from that testimony was minimal, and in fact it may have served to lessen the impact of more damaging, similar allegations elicited in response to defense questioning. Accordingly, Kibler has failed to satisfy the plain error standard. Olano, 507 U.S. at 734; Williams, 2001 WL 1443900 at *9. In fact, even if we were to interpret the initial objection as sufficient to avoid forfeiture, Kibler has failed to meet the lesser standard as well. Even where a defendant properly preserves an objection, "[i]f a reviewing court is certain that an evidentiary error did not have 'a substantial and injurious effect or influence on the jury's verdict,' the error is harmless and the jury verdict stands." United States v. Sargent, 98 F.3d 325, 330 (7th Cir. 1996), quoting United States v. Hanson, 994 F.2d 403,

407 (7th Cir. 1993) (internal citations omitted). For the reasons stated above, any error in admitting the "hit" evidence is harmless under that standard as well.

Kibler also raises a cursory challenge to the admission of "evidence regarding the second floor bedroom, where both black and white girls would come and exchange food stamps and sex with Defendant-Appellant for 'crack.'" Def. Brief at 23. Kibler asserts that the evidence was prejudicial because it concerned immoral conduct intertwined with potential racial issues, and that it had no probative value. The evidence was probative because it concerned the drug transactions that formed the basis for the indictment. The government is not prevented from eliciting testimony regarding relevant drug transactions, solely because payment for those drugs are made in the form of food stamps or sex rather than cash, and the race of the women involved was raised only incidentally when witnesses were identifying the persons involved. Moreover, Kibler has made no effort to argue how admission of that evidence could have had an impact on the outcome of the trial, and it is apparent from the record that it could have no impact whatsoever. Accordingly, the alleged evidentiary errors in this case do not provide a basis for reversal.

The only other argument raised by Kibler is that his due process rights were violated when he was sentenced based on a quantity of drugs that was neither pled in the indictment nor subjected to proof beyond a reasonable doubt. He argues based upon Apprendi v. New Jersey, 530 U.S. 466 (2000), that the drug amounts constituted an element of the offense that had to be proven to the jury beyond a reasonable doubt. The rule in Apprendi applies only to drug quantities that permit a sentence in excess of the default statutory maximum. United States v. Nance, 236 F.3d 820, 825 (7th Cir. 2000). In this case, Kibler possessed prior drug convictions as was set forth in the enhancement information filed pursuant to 21 U.S.C. sec. 851, which affected his default statutory maximum. Accordingly, his sentence under counts 2 and 3 fell within that default maximum, and no Apprendi issue arises.

Regarding the conspiracy count, however, the government concedes that he was sentenced in excess of the default statutory maximum. His sentence of life imprisonment was based upon 21 U.S.C. sec. 841(b)(1)(B), which authorizes that sentence in cases involving prior convictions and a conspiracy to distribute 5 grams or more of cocaine base. Accordingly, the government acknowledges that the indictment should have charged a conspiracy to distribute 5 or more grams of cocaine base, and that the issue of whether that quantity was met should have been submitted to the jury. As to count one, the government concedes that there was plain error that affected the defendant's substantial rights. That, however, does not end the inquiry.

Under the plain error standard, such error is not reversible unless it seriously affected the "fairness, integrity, or public reputation of the judicial proceedings." Nance, 236 F.3d at 825-26. We have held that the failure to allege the drug quantity in the indictment is not reversible error where it is clear beyond a reasonable doubt that a properly worded indictment and a properly instructed jury instruction would have produced a guilty finding Id. Where the evidence of the drug quantity is overwhelming, the error does not affect the fairness, integrity or public reputation of the judicial proceedings, because there is no reasonable doubt that a jury faced with proper instructions would have found him guilty of that quantity and no reasonable doubt that a grand jury presented with a properly worded charge would have returned the indictment.

We are presented with such a situation here. No reasonable jury, presented with the evidence in this case, could have concluded that the conspiracy for which Kibler was convicted involved less than 5 grams of cocaine base. A brief glance at the witness testimony makes the point.

Steven Davis testified that he purchased sixteenth ounce quantities of crack on a number of occasions. He testified that Sandra Davis, one of Kibler's girlfriends, sold him a sixteenth which she identified as belonging to both her and Kibler. At that time, he saw

approximately ten to fifteen sixteenths in the bag she was holding, which is approximately 17-26 grams. On another occasion, he testified that she inadvertently dropped two ounces (56 grams) of Kibler's crack on the street, returning with Kibler to search for it.

Jennifer Scott testified that she began purchasing crack from Kibler six months after she was released from prison in 1996. She paid for it with cash and with sex, eventually purchasing crack nearly every day, and sometimes as often as three times per day, in amounts varying in worth from $20, $50 and $100. At one time, she saw Kibler with approximately 150 grams of crack.

Katina Harbor testified that she used crack throughout the time that she was Kibler's girlfriend, from the fall of 1996 through January 1998. During the last two months, she was consuming more than 5 grams daily, and obtained at least 300 grams from him during that time. She also assisted Kibler on occasion, and on one occasion she counted out five hundred $20 and $50 rocks of crack. Five hundred $20 rocks amounts to 50-100 grams. She also testified that she traveled with him to Elgin three or four times, and that they obtained a softball-sized rock of crack on those occasions. Those rocks would weigh approximately 140 grams each.

The other testimony was consistent with that portrayal. The evidence is simply overwhelming that the conspiracy encompassed significantly more than 5 grams of cocaine base, and no reasonable jury could conclude otherwise. Accordingly, there is no basis for reversal.

The decision of the district court is

AFFIRMED.