NONPRECEDENTIAL DISPOSITION

To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2007
Decided April 2, 2008

**Before**

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 06-2298

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 05-CR-188-C-01 |
| MANUEL LUQUE-BARAHONA, *Defendant-Appellant.* | Barbara B. Crabb, *Chief Judge*. |

**O R D E R**

Manuel Luque-Barahona pleaded guilty to being in the United States without permission after he was deported. *See* 8 U.S.C. § 1326(a). The district court concluded that he had a prior conviction for a felony crime of violence and added 16 levels to his offense level, *see* U.S.S.G. § 2L1.2(b)(1)(A)(ii), and sentenced him to 57 months' imprisonment. Luque-Barahona challenges the 16-level increase, claiming that the district court did not rely on competent evidence in finding that his prior conviction was for a crime of violence. We affirm the judgment.

Luque-Barahona, a Peruvian citizen, has encountered immigration authorities multiple times through his numerous clashes with the law. Most recently sheriff's deputies in Richland County, Wisconsin, arrested him following a domestic dispute. State authorities informed Immigration and Customs Enforcement of Luque-Barahona's presence, and federal agents discovered that Luque-Barahona once again was in the country illegally (having already been deported three times). Luque-Barahona was charged under § 1326(a) and pleaded guilty. The government had informed him that it intended to seek an 8-level increase in his offense level due to his prior aggravated-felony convictions. *See* U.S.S.G. § 2L1.2(b)(1)(C). But the probation officer concluded that Luque-Barahona's 1996 Florida conviction for aggravated battery of a police officer, *see* FLA. STAT. §§ 784.03(1)(a), 784.07(2)(b), qualified as a felony "crime of violence," subjecting Luque-Barahona to a 16-level increase instead, U.S.S.G. § 2L1.2(b)(1)(A)(ii). The probation officer noted that the "Miami Police Department complaint/arrest affidavit indicates" that Luque-Barahona had "pushed one of the officers" during the arrest. With the 16-level increase and a 3-level reduction for acceptance of responsibility, the probation officer calculated a total offense level of 21. Combining that with Luque-Barahona's criminal history category of IV, the probation officer recommended a guidelines imprisonment range of 57 to 71 months.

Defense counsel did not object initially to the calculations in the presentence report, but in open court Luque-Barahona personally argued that the 53-day sentence he received for the Florida battery conviction evidenced that it was not an aggravated or violent crime. Counsel then pursued this argument. He acknowledged that the probation officer had gleaned from the complaint/arrest affidavit "that the defendant pushed one of the officers and struggled to avoid arrest," but he argued that the Florida court "could not have looked upon it as greatly serious" given the short sentence. The district judge, however, adopted the guidelines calculations set forth in the presentence report, including the 16-level increase.

Luque-Barahona filed a notice of appeal, but his appointed lawyer could not identify a nonfrivolous issue for appeal and sought leave to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). A panel of this court denied counsel's motion to withdraw and directed her to brief whether the district court properly characterized Luque-Barahona's felony battery conviction as a crime of violence under § 2L1.2(b)(1)(A)(ii). That is the only question before us.

A defendant convicted under § 1326(a) is subject to an increase of 16 offense levels if he has a prior conviction for a felony "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). Luque-Barahona concedes that his Florida battery resulted in a felony conviction. (Though typically a misdemeanor under Florida law, FLA. STAT. § 784.03(1)(b), battery is a felony when committed against a police officer, *id*. § 784.07(2)(b).) And in this context, "crime of

violence" is defined as "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." Battery is not one of the enumerated offenses, so it qualifies as a crime of violence only if the "use, attempted use, or threatened use of physical force against the person of another" is one of the statutory elements. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

Florida law provides that a person commits battery if he intentionally causes bodily harm, or if he "touches or strikes another person against the will of the other." FLA. STAT. § 784.03(1)(a). Read literally, the statutory language might suggest that the use of "force" is always an element of battery under Florida law, but we have held that the force used must have been more than de minimis for a battery to qualify as a crime of violence. *See Flores v. Ashcroft*, 350 F.3d 666, 669-72 (7th Cir. 2003) (explaining that not all touching involves violence, so even if lobbing "snowball, spitball, or paper airplane" at victim causes offensive contact and leads to battery conviction, offense would not qualify as crime of violence because only physical force that is "violent in nature" can elevate simple battery to "violent felony"); *United States v. Humphreys*, 468 F.3d 1051, 1055-56 (7th Cir. 2006) (examining Illinois aggravated-battery conviction to determine whether it was violent for purposes of Armed Career Criminal Act); *but see United States v. Griffith*, 455 F.3d 1339, 1342-45 (11th Cir. 2006) (disagreeing with *Flores* and holding that offense is crime of violence if it has as element any use or threat of physical force—not necessarily "violent"). The Florida statute, though, is framed broadly to criminalize *any* use of force, whether violent, i.e., striking, or de minimis, i.e., touching. *See* FLA. STAT. § 784.03(1)(a); *State v. Hearns*, 961 So. 2d 211, 215 (Fla. 2007); *Johnson v. State*, 858 So. 2d 1071, 1072 (Fla. Dist. Ct. App. 2003) (holding that spitting on police officer constitutes unwanted touching and thus battery under § 784.03 but is not a "use or threat of use of physical force or violence"). Luque-Barahona accordingly argues, and the government concedes, that the Florida statutes which define felony battery sometimes, but not always, include as an element "the use, attempted use, or threatened use of physical force against another." The parties also agree that, if a prior conviction might have been a crime of violence depending on how it was prosecuted, the district court may look beyond the statutory language in determining whether the conviction was for a crime of violence for the purposes of § 2L1.2(b)(1)(A)(ii). *See United States v. Gilbert*, 464 F.3d 674, 678 (7th Cir. 2006); *United States v. Sperberg*, 432 F.3d 706, 708 (7th Cir. 2005). But what a court may examine is limited. The court may not look beyond (1) admissions made by the defendant and (2) the charging document, plea agreement, plea-hearing transcript, and comparable *judicial* records from the former conviction. *United States v. Kindle*, 453 F.3d 438, 440-42 (7th Cir. 2006); *United States v. Lewis*, 405 F.3d 511, 514-15 (7th Cir. 2005). Neither police reports, *see Shepard v. United States*, 544 U.S. 13, 16 (2005); *United States v. McGee*, 408

F.3d 966, 988 (7th Cir. 2005); *United States v. Blake*, 415 F.3d 625, 629-30 (7th Cir. 2005), nor arrest affidavits, *see Lewis*, 405 F.3d at 515, may be considered.

In this case the probation officer, and ultimately the district court, relied upon the arresting officer's "complaint/arrest affidavit" in concluding that Luque-Barahona was convicted of employing more than de minimis force to batter the victim police officer. This was error, Luque-Barahona contends, because the complaint/arrest affidavit is outside the scope of evidence that the court could consider in deciding if the crime is a crime of violence. Luque-Barahona did not waive this argument because nothing in the record suggests that either he or his lawyer made a conscious decision to forego the contention. *See United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847-49 (7th Cir. 2005). But still he forfeited the argument because his position here differs from the one he took in the district court. *See Jaimes-Jaimes*, 406 F.3d at 847-49; *United States v. Haddad*, 462 F.3d 783, 793 (7th Cir. 2006). Our review thus is for plain error, and under that standard we will not correct a forfeited error, even one that is obvious and affects the defendant's substantial rights, unless the error significantly undermines the fairness, integrity, or reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Kibler*, 279 F.3d 511, 514 (7th Cir. 2002).

The government concedes that the complaint/arrest affidavit is not competent evidence. The government maintains, however, that Luque-Barahona effectively *admitted* pushing the police officer when counsel accepted without challenge the probation officer's account of the underlying facts and recited those same facts to the court. It follows, says the government, that the district court did not commit error at all, much less plain error, in finding that Luque-Barahona was prosecuted for pushing the victim officer—i.e., using more than de minimis force—and thus committed a crime of violence. We agree with the government's position.

A defendant may admit to conduct by accepting the factual content of the presentence report, *see United States v. Martinez-Vega,* 471 F.3d 559, 563 (5th Cir. 2006); *United States v. Williams*, 410 F.3d 397, 403 n.4 (7th Cir. 2005), or through his counsel's iterations of what conduct underlies a conviction, *see Kindle*, 453 F.3d at 441. We are persuaded that, in this particular case, Luque-Barahona admitted that he pushed the police officer because he and his lawyer essentially endorsed the probation officer's account of the underlying facts by accepting and reciting from the presentence report. For that reason, even if it was error for the district court to overlook the probation officer's reliance on the complaint/arrest affidavit, we do not think the error was plain, or obvious. *See United States v. White*, 443 F.3d 582, 592-93 (7th Cir. 2006); *Kindle*, 453 F.3d at 442. Moreover, even if we perceived an obvious error, we would not exercise our discretion to correct it; Luque-Barahona has never suggested that really there was no push or that the push was too light to constitute a use of

force sufficient for the 16-level upward adjustment to apply. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (suggesting that pushing another person involves purposeful use of physical force); *cf. Flores*, 350 F.3d at 669-72 (requiring that force used be "violent in nature—the sort that is intended to cause bodily injury, or at a minimum is likely to do so"). Instead, Luque-Barahona essentially argues, not that the district court reached the wrong result, but that the evidence of record is too thin to sustain the court's conclusion even if it is factually correct. Under these circumstances, we cannot conclude that the integrity of the sentencing proceeding was undermined to a degree that would warrant correcting any error that may have occurred. *See United States v. Turbides-Leonardo*, 468 F.3d 34, 39-40 (1st Cir. 2006); *United States v. Pittman*, 418 F.3d 704, 709-10 (7th Cir. 2005).

Accordingly, Luque-Barahona's sentence is AFFIRMED.