Justice Scalia
delivered the opinion of the Court.
We decide whether the Florida felony offense of battery by “[a]ctually and intentionally touch[ing]” another person, Fla. Stat. § 784.03(l)(a), (2) (2003), “has as an element the use . . . of physical force against the person of another,” 18 U. S. C. §924(e)(2)(B)(i), and-thus constitutes a “violent felony” under the Armed Career Criminal Act, § 924(e)(1).
I
Curtis Johnson pleaded guilty to knowingly possessing ammunition after having been convicted of a felony, in viola *136 tion of 18 U. S. C. § 922(g)(1). The Government sought an enhanced penalty under § 924(e), which provides that a person who violates § 922(g) and who “has three previous convictions” for “a violent felony” “committed on occasions different from one another” shall be imprisoned for a minimum of 15 years and a maximum of life. A “violent felony” is defined as “any crime punishable by imprisonment for a term exceeding one year” that:
“(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
“(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B).
Johnson’s indictment specified five prior felony convictions. The Government contended that three of those convictions— for aggravated battery and for burglary of a dwelling in October 1986, and for battery in May 2003 — rendered Johnson eligible for sentencing under § 924(e)(1). At the sentencing hearing, Johnson did not dispute that the two 1986 convictions were for “violent felon[ies],” but he objected to counting his 2003 battery conviction. That conviction was for simple battery under Florida law, which ordinarily is a first-degree misdemeanor, Fla. Stat. § 784.03(l)(b), but is a third-degree felony for a defendant who (like Johnson) has been convicted of battery (even simple battery) before, §784.03(2).
Under § 784.03(l)(a), a battery occurs when a person either “1. [ajctually and intentionally touches or strikes another person against the will of the other,” or “2. [intentionally causes bodily harm to another person.” Because the elements of the offense are disjunctive, the prosecution can prove a battery in one of three ways. State v. Hearns, 961 So. 2d 211, 218 (Fla. 2007). It can prove that the defendant *137 “[intentionally caus[ed] bodily harm,” that he “intentionally str[uck]” the victim, or that he merely “[actually and intentionally touche[d]” the victim.
Since nothing in the record of Johnson’s 2003 battery conviction permitted the District Court to conclude that it rested upon anything more than the least of these acts, see iShepard v. United States, 544 U. S. 13, 26 (2005) (plurality opinion), his conviction was a predicate conviction for a “violent felony” under the Armed Career Criminal Act only if “[actually and intentionally touching]” another person constitutes the use of “physical force” within the meaning of § 924(e)(2)(B)(i). The District Court concluded that it does, and accordingly sentenced Johnson under § 924(e)(1) to a prison term of 15 years and 5 months.
The Eleventh Circuit affirmed. 528 F. 3d 1318 (2008). We granted certiorari, 555 U. S. 1169 (2009).
II
Florida has a statute similar to the Armed Career Criminal Act that imposes mandatory-minimum sentences upon “violent career criminals],” Fla. Stat. § 775.084(4)(d) (2007), defined to mean persons who have three convictions for certain felonies, including any “forcible felony,” § 775.084(l)(d)(l)(a). “[F]orcible felony” is defined to include a list of enumerated felonies — including murder, manslaughter, sexual battery, carjacking, aggravated assault, and aggravated battery — and also “any other felony which involves the use or threat of physical force or violence against any individual.” §776.08. In Hearns, the Florida Supreme Court held that the felony offense of battery on a law enforcement officer, § 784.07(2)(b) — which requires the same conduct (directed against a law enforcement officer) as misdemeanor battery under § 784.03(l)(a) — was not a forcible felony. See 961 So. 2d, at 219. It said that since § 784.03(l)(a) requires proof of only the slightest unwanted physical touch, *138 “the use ... of physical force” was not an element of the offense. Id., at 219.
Johnson argues that in deciding whether any unwanted physical touching constitutes “physical force” under 18 U. S. C. §924(e)(2)(B)(i), we are bound by the Florida Supreme Court’s conclusion in Hearns that it does not constitute “physical force.” That is not so. The meaning of “physical force” in § 924(e)(2)(B)(i) is a question of federal law, not state law. And in answering that question we are not bound by a state court’s interpretation of a similar — or even identical — state statute.
We are, however, bound by the Florida Supreme Court’s interpretation of state law, including its determination of the elements of Fla. Stat. § 784.03(2). See Johnson v. Fankell, 520 U. S. 911, 916 (1997). The Florida Supreme Court has held that the element of “actually and intentionally touching” under Florida’s battery law is satisfied by any intentional physical contact, “no matter how slight.” Hearns, 961 So. 2d, at 218. The most “nominal contact,” such as a “ta[p] ... on the shoulder without consent,” id,., at 219, establishes a violation. We apply “th[is] substantive elemen[t] of the criminal offense,” Jackson v. Virginia, 443 U. S. 307, 324, n. 16 (1979), in determining whether a felony conviction for battery under Fla. Stat. §784.03(2) meets the definition of “violent felony” in 18 U. S. C. § 924(e)(2)(B)(i).
III
Section 924(e)(2)(B)(i) does not define “physical force,” and we therefore give the phrase its ordinary meaning. Bailey v. United States, 516 U. S. 137, 144-145 (1995). The adjective “physical” is clear in meaning but not of much help to our inquiry. It plainly refers to force exerted by and through concrete bodies — distinguishing physical force from, for example, intellectual force or emotional force. It is the noun that poses the difficulty; “force” has a number of meanings. For present purposes we can exclude its specialized *139 meaning in the field of physics: a cause of the acceleration of mass. Webster’s New International Dictionary 986 (2d ed. 1954) (hereinafter Webster’s Second). In more general usage it means “[sjtrength or energy; active power; vigor; often an unusual degree of strength or energy,” “[pjower to affect strongly in physical relations,” or “[pjower, violence, compulsion, or constraint exerted upon a person.” Id., at 985. Black’s Law Dictionary 717 (9th ed. 2009) (hereinafter Black's) defines “force” as “[pjower, violence, or pressure directed against a person or thing.” And it defines “physical force” as “[fjoree consisting in a physical act, esp. a violent act directed against a robbery victim.” Ibid. All of these definitions suggest a degree of power that would not be satisfied by the merest touching.
There is, however, a more specialized legal usage of the word “force”: its use in describing one of the elements of the common-law crime of battery, which consisted of the intentional application of unlawful force against the person of another. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.15(a), p. 301 (1986 and Supp. 2003); accord, Black’s 173. The common law held this element of “force” to be satisfied by even the slightest offensive touching. See 3 W. Blackstone, Commentaries oh the Laws of England 120 (1768) (hereinafter Blackstone); Lynch v. Commonwealth, 131 Va. 762, 765, 109 S. E. 427, 428 (1921); see also 2 La-Fave & Scott, supra, § 7.15(a). The question is whether the term “force” in 18 U. S. C. § 924(e)(2)(B)(i) has the specialized meaning that it bore in the common-law definition of battery. The Government asserts that it does. We disagree.
Although a common-law term of art should be given its established common-law meaning, United States v. Turley, 352 U. S. 407, 411 (1957), we do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning, Jarecki v. G. D. Searle & Co., 367 U. S. 303, 307 (1961), and we “do not force term-of-art definitions into contexts where they plainly *140 do not fit and produce nonsense,” Gonzales v. Oregon, 546 U. S. 243, 282 (2006) (Scalia, J., dissenting). Here we are interpreting the phrase “physical force” as used in defining not the crime of battery, but rather the statutory category of “violent felon[ies],” § 924(e)(2)(B). In Leocal v. Ashcroft, 543 U. S. 1 (2004), we interpreted the statutory definition of “crime of violence” in 18 U. S. C. § 16. That provision is very similar to § 924(e)(2)(B)(i), in that it includes any felony offense which “has as an element the use ... of physical force against the person or property of another,” § 16(a). We stated:
“In construing both parts of §16, we cannot forget that we ultimately are determining the meaning of the term ‘crime of violence.' The ordinary meaning of this term, combined with § 16’s emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes ....” 543 U. S., at 11.
Just so here. We think it clear that in the context of a statutory definition of “violent felony,” the phrase “physical force” means violent force — that is, force capable of causing physical pain or injury to another person. See Flores v. Ashcroft, 350 F. 3d 666, 672 (CA7 2003) (Easterbrook, J.). Even by itself, the word “violent” in § 924(e)(2)(B) connotes a substantial degree of force. Webster’s Second 2846 (defining “violent” as “[mjoving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement . . . ”); 19 Oxford English Dictionary 656 (2d ed. 1989) (“Characterized by the exertion of great physical force or strength”); Black’s 1706 (“[o]f, relating to, or characterized by strong physical force”). When the adjective “violent” is attached to the noun “felony," its connotation of strong physical force is even clearer. See id., at 1188 (defining “violent felony” as “[a] crime characterized by extreme physical force, such as murder, forcible rape, and *141 assault and battery with a dangerous weapon”); see also United States v. Doe, 960 F. 2d 221, 225 (CA1 1992) (Breyer, C. J.) (“[T]he term to be defined, ‘violent felony,’. .. calls to mind a tradition of crimes that involve the possibility of more closely related, active violence”).
It is significant, moreover, that the meaning of “physical force” the Government would seek to import into this definition of “violent felony” is a meaning derived from a common-law misdemeanor. At common law, battery — all battery, and not merely battery by the merest touching — was a misdemeanor, not a felony. See 4 Blackstone 216-218 (1769); see also 1 LaFave & Scott, supra, § 2.1(b), at 90; ALI, Model Penal Code §211.1, Comment, p. 175 (1980). As the dissent points out, post, at 149-150 (opinion of Alito, J.), the dividing line between misdemeanors and felonies has shifted over time. But even today a simple battery — whether of the mere-touching or bodily-injury variety — generally is punishable as a misdemeanor.[1] See, e. g., 2 W. LaFave, Substantive Criminal Law § 16.1(b) (2d ed. 2003 and Supp. 2009-2010); Cal. Penal Code Ann. §§ 242 and 243 (West 2008); Fla. Stat. §784.03(l)(b); 111. Comp. Stat., ch. 720, §5/12-3(b) (West 2009); Tex. Penal Code Ann. § 22.01(b) (West Supp. 2009). It is unlikely that Congress would select as a term of art defining “violent felony” a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor. Of course “physical force” can be given its common-law misdemeanor meaning by artful language, but here the only text that can be claimed to accomplish that is the phrase “physical *142 force” itself. Since, as we have seen, that is as readily (indeed, much more readily) taken to describe violent force, there is no reason to define “violent felony” by reference to a nonviolent misdemeanor.
The Government argues that we cannot construe 18 U. S. C. § 924(e)(2)(B)(i) to reach only offenses that have as an element the use of violent force, because there is no modifier in § 924(e)(2)(B)(i) that specifies the degree of “physical force” required. As we have discussed, however, the term “physical force” itself normally connotes force strong enough to constitute “power” — and all the more so when it is contained in a definition of “violent felony.” Nor is there any merit to the dissent’s contention, post, at 148-149, that the term “force” in § 924(e)(2)(B)(i) cannot be read to require violent force, because Congress specifically named “burglary” and “extortion” as “violent felon[ies]” in § 924(e)(2)(B)(ii) notwithstanding that those offenses can be committed without violence. The point would have force (so to speak) if burglary and extortion were listed in § 924(e)(2)(B)(i), as felonies that have “as an element the use, attempted use, or threatened use of physical force.” In fact, however, they are listed in § 924(e)(2)(B)(ii) as examples of felonies that “presen[t] a serious potential risk of physical injury to another.” The Government has not argued that intentional, unwanted touching qualifies under this latter provision. What the dissent’s argument comes down to, then, is the contention that, since felonies that create a serious risk of physical injury qualify as violent felonies under subparagraph (B)(ii), felonies that involve a mere unwanted touching must involve the use of physical force and qualify as violent felonies under subparagraph (B)(i). That obviously does not follow.[2]
*143 The Government also asks us to draw a negative inference from the presence of the “bodily injury” specification added to the phrase “physical force” in § 922(g)(8)(C)(ii). That provision forbids the possession of firearms by a person subject to a court order explicitly prohibiting the “use, attempted use, or threatened use of physical force against [an] intimate partner or child that would reasonably be expected to cause bodily injury.” Ibid. The absence of such language in §924(e)(2)(B)(i), the Government contends, proves that the merest touch suffices. Even as a matter of logic that does not follow. Specifying that “physical force” must rise to the level of bodily injury does not suggest that without the qualification “physical force” would consist of the merest touch. It might consist, for example, of only that degree of force necessary to inflict pain — a slap in the face, for example. Moreover, this is not a case where Congress has “in-elude[d] particular language in one section of a statute but omit[ted] it in another section of the same Act,” Russello v. United States, 464 U. S. 16, 23 (1983) (internal quotation marks omitted; emphasis added). Section 922(g)(8)(C)(ii) was enacted into law in 1994 — eight years after enactment of the language in § 924(e)(2)(B)(i). Compare Pub. L. 103-322, §110401, 108 Stat. 2015 (1994), with Pub. L. 99-570, §1402, 100 Stat. 3207-89 (1986).
IV
The Government contends that interpreting 18 U. S. C. § 924(e)(2)(B)(i) to require violent force will undermine its ability to enforce the firearm disability in § 922(g)(9) for persons who previously have been convicted of a “misdemeanor crime of domestic violence,” which is defined to include certain misdemeanor offenses that have, “as an element, the use or attempted use of physical force ...,”§ 921(a)(33)(A)(ii). The prediction is unfounded. We have interpreted the phrase “physical force” only in the context of a statutory definition of “violent felony.” We do not decide that the phrase has the same meaning in the context of defining a *144 misdemeanor crime of domestic violence. The issue is not before us, so we do not decide it.
In a similar vein, the Government asserts that our interpretation will make it more difficult to remove, pursuant to 8 U. S. C. § 1227(a)(2)(E), an alien convicted of a “crime of domestic violence.” That phrase is defined to mean “any crime of violence (as defined in [18 U. S. C. § 16])” committed by certain persons, including spouses, former spouses, and parents. § 1227(a)(2)(E)(i). The Government contends it will be harder to obtain removal based upon battery convictions that, like those in Florida, do not require the use of violent physical force. The dissent likewise anticipates that in the States it has identified, post, at 151-152, and n. 3, as having generic felony-battery statutes that cover both violent force and unwanted physical contact, our decision will render convictions under those statutes “outside the scope of [the Armed Career Criminal Act],” post, at 152.
This exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the “ ‘modified categorical approach’ ” that we have approved, Nijhawan v. Holder, 557 U. S. 29, 41 (2009), permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. See Chambers v. United States, 555 U. S. 122, 126 (2009); Shepard, 544 U. S., at 26 (plurality opinion); Taylor v. United States, 495 U. S. 575, 602 (1990). Indeed, the Government has in the past obtained convictions under the Armed Career Criminal Act in precisely this manner. See, e. g., United States v. Simms, 441 F. 3d 313, 316-317 (CA4 2006) (Maryland battery); cf. United States v. Robledo-Leyva, 307 Fed. Appx. 859, 862 (CA5) (Florida battery), cert. denied, *145 558 U. S. 831 (2009); United States v. Luque-Barahona, 272 Fed. Appx. 521, 524-525 (CA7 2008) (same).
It may well be true, as the Government contends, that in many cases state and local records from battery convictions will be incomplete. But absence of records will often frustrate application of the modified categorical approach — not just to battery but to many other crimes as well. See, e. g., Shepard, supra, at 22-23 (burglary). It is implausible that avoiding that common-enough consequence with respect to the single crime of battery, under the single statute that is the Armed Career Criminal Act, caused Congress to import a term of art that is a comical misfit with the defined term “violent felony.”
* * *
The Government asks us to remand to the Eleventh Circuit for its consideration of whether Johnson’s 2003 battery conviction is a “violent felony” within the meaning of the so-called “residual clause” in 18 U.S.C. § 924(e)(2)(B)(ii). We decline to do so. The Government did not keep this option alive because it disclaimed at sentencing any reliance upon the residual clause. App. 44-45. Moreover, the parties briefed the § 924(e)(2)(B)(ii) issue to the Eleventh Circuit, which nonetheless reasoned that if Johnson’s conviction under Fla. Stat. § 784.03(2) satisfied § 924(e)(2)(B)(i), then it was a predicate “violent felony” under § 924(e)(1); but “if not, then not.” 528 F. 3d, at 1320.
We reverse the judgment of the Eleventh Circuit, set aside Johnson’s sentence, and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 The dissent notes, post> at 150, that, around the time the Armed Career Criminal Act became law, in “quite a few States” it was a felony offense to commit an unwanted physical touching of certain victims, such as police officers. That would be relevant for determining whether a conviction under one of those statutes meets the 18 U. S. C. § 924(e)(2)(B) requirement of being a “felony” conviction. But it has no bearing upon whether the substantive element of those offenses — making unwanted physical contact with certain special categories of individuals — involves the use of “force” within the meaning of §924(e)(2)(B)(i), a statute applicable to all victims.

 Even further afield is the dissent’s argument, post, at 147, that since §924(e)(2)(B)(ii) requires conduct that “presents a serious potential risk of physical injury to another,” § 924(e)(2)(B)(i) must not. That is rather like saying a provision which includes (i) apples and (ii) overripe oranges must exclude overripe apples. It does not follow.