FILED
United States Court of Appeals
Tenth Circuit

**January 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

BYRON VENTURA-PEREZ, a/k/a
Byron Espino,

        Defendant - Appellant.

No. 10-1529

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:10-CR-00296-DME-1)**

---

Howard A. Pincus, Assistant Federal Public Defender, (Raymond P. Moore, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant - Appellant.

James C. Murphy, Assistant United States Attorney, (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

---

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

In August 2010, Defendant Byron Ventura-Perez pleaded guilty in the

United States District Court for the District of Colorado to illegal reentry after

deportation subsequent to an aggravated-felony conviction.  *See* 8 U.S.C.
§ 1326(a), (b)(2).  He raises two challenges on appeal.  First, he contends that the
district court miscalculated his offense level under the Sentencing Guidelines.
The court increased his offense level by 16 on the ground that his Texas
conviction of burglary of a habitation was for "burglary of a dwelling" and
therefore a crime of violence under USSG § 2L1.2 cmt. 1(B)(iii) (defining *crime
of violence*).  *See id.* § 2L1.2(b)(1)(A)(ii) (imposing 16-level enhancement if prior
felony conviction was for crime of violence).  Defendant asserts, however, that
the Texas statute encompasses offenses in addition to burglary of a dwelling; that
the particulars of his prior conviction are irrelevant; and that even if they are
relevant, the record did not establish that his conviction had been for burglary of
a dwelling.  Second, he contends that when the court imposed sentence, it
improperly refused to consider sentencing disparities created by fast-track
programs in other districts.

We have jurisdiction under 28 U.S.C. § 1291 and affirm.  On the first
contention we hold that even if the Texas offense of burglary of a habitation
encompasses more than burglary of a dwelling, the particulars of Defendant's
prior conviction are relevant and his counsel admitted at sentencing in federal
court that he had been convicted of burglary of an apartment, which is clearly
burglary of a dwelling.  Although he argues on appeal that his attorney's
statement was ambiguous and erroneous, we see no ambiguity, and he cannot

challenge on appeal the accuracy of the statement. On the second contention we follow recent circuit precedent and hold that Defendant cannot complain of sentencing disparities because he did not present to the sentencing court any evidence that he would have been eligible for fast-track treatment in another district.

## I. BACKGROUND

In 2004 Defendant Byron Ventura-Perez, a native of Guatemala living in Houston, was convicted of burglary of a habitation under Texas law. After serving 20 months in prison, he was deported. Six months later he returned to the United States, residing first in Texas before moving to Colorado in 2009, where he lived with his fiancee. In May 2010 the two had a domestic dispute and Defendant was arrested. He pleaded guilty to misdemeanor battery in state court.

This arrest led to his federal prosecution and guilty plea. At sentencing, the district court adopted the offense-level calculation in the presentence report (PSR). The PSR set Defendant's base offense level at 8, *see* USSG § 2L1.2(a), subtracted 3 levels for acceptance of responsibility, *see id.* § 3E1.1, and added 16 levels after classifying the 2004 burglary as a crime of violence, *see id.* § 2L1.2(b)(1)(A)(ii). The total offense level was therefore 21. Because his two prior convictions put him in criminal-history category III, his guideline sentencing range was 46–57 months. *See id.* ch. 5, pt. A.

Before the sentencing hearing Defendant had submitted a sentencing statement and motion for variance that raised four arguments for a below-guidelines sentence: (1) the district court should disregard the 16-level enhancement because the promulgation of illegal-entry guidelines had exceeded the United States Sentencing Commission's institutional role; (2) it would be unreasonable to "double count" his 2004 burglary conviction—using it both to establish his criminal-history score and to increase significantly his offense level; (3) USSG § 2L1.2 fosters unwarranted sentencing disparities, thereby violating the precepts of 18 U.S.C. § 3553(a); and (4) the lack of a fast-track program for illegal-reentry cases in Colorado would lead to unwarranted sentencing disparities if the court did not exercise its discretion to vary from the guidelines. (Fast-track programs can be instituted for a district by the United States attorney to allow the court, on motion from the government, to depart downward from the guidelines offense level by up to four levels. *See* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-21, § 401(m), 117 Stat. at 675 (2003); USSG § 5K3.1; *see generally United States v. Lopez-Macias*, 661 F.3d 485, 486–87 (10th Cir. 2011).)

The district court rejected these arguments. In particular, it upheld the 16-level enhancement for crimes of violence. Comparing that enhancement to the 8-level enhancement for a conviction for an aggravated felony, *see* USSG

§ 2L1.2(b)(1)(C); *see also id.* § 2L1.2 cmt. 3(A) (adopting definition of *aggravated felony* in 8 U.S.C. § 1101(a)(43)), the court said:

> [T]he offense is probably more severe than an aggravated felony because the Congress has determined that there is a special fear that happens when somebody enters into a habitation and dwelling, particularly when it's occupied, and a particular high risk of violence when that happens that the Court simply cannot set aside completely.

R., Vol. 2 at 62. Nevertheless, the court decided to vary downward from the guidelines. It described Defendant as "industrious" and said that "if [Defendant] can conquer alcoholism, . . . there's every hope that he will be able to avoid these problems again." *Id.* at 63. To quantify the downward variance, it "split the difference between an eight-level enhancement for aggravated felony and a 16-level enhancement for [a] crime of violence" and treated Defendant as if he had received a 12-level enhancement. *Id.* at 62–63. Defendant's sentencing range was thereby reduced to 30–37 months, and the court imposed a sentence of 30 months' imprisonment. In concluding its explanation, the court said:

> Even though the Court is disregarding the disparity of the Fast Track, it can't ignore the fact that it's there. Even though the Court is disregarding the fact that this prior Texas conviction is being used on both the offense level and the level of his criminal history, the Court can't deny that it's there.

*Id.* at 66–67.

## II.  DISCUSSION

### A.  Treatment of Texas Offense as Crime of Violence

The guidelines definition of *crime of violence* lists a number of offenses, including "burglary of a dwelling," as crimes of violence.  USSG § 2L1.2 cmt. 1(B)(iii).  Defendant argues that the crime-of-violence enhancement should not have been applied to him because the Texas burglary-of-a-habitation statute includes burglaries of structures "appurtenant to" a habitation, and would therefore include burglaries of premises that are not dwellings.  Aplt. Br. at 18.

The statutory offense to which Defendant pleaded guilty, Texas Penal Code Ann. § 30.02 (West 2011), provides in part:

> (a) A person commits an offense if, without the effective consent of the owner, the person:
>> (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault[.]

Texas law defines *habitation* as follows:

> "*Habitation*" means a structure or vehicle that is adapted for the overnight accommodation of persons, and *includes*:
>> (A) each separately secured or occupied portion of the structure or vehicle; and
>> (B) *each structure appurtenant to or connected with the structure* or vehicle.

Texas Penal Code Ann. § 30.01(1) (emphasis added).

When determining whether a prior conviction was for a crime of violence under USSG § 2L1.2, this circuit follows the same approach set forth by the

Supreme Court for determining whether a prior conviction was for a violent felony under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which establishes a mandatory minimum sentence of 15 years if the defendant has three previous convictions for violent felonies or serious drug offenses. *See United States v. Torres-Romero*, 537 F.3d 1155, 1158 (10th Cir. 2008). In *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court stated that the sentencing court should ordinarily apply a "categorical approach" that limits the sentencing court's inquiry to determining whether the statutory definition of the prior offense satisfies the definition of violent felony. *See Shepard*, 544 U.S. at 17 (internal quotation marks omitted); *Taylor*, 495 U.S. at 602. But a modification to that approach is proper if the statute's language encompasses both violent felonies and other crimes. As the Court recently explained:

> When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which [are violent felonies] and some of which [are] not, the modified categorical approach that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

*Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) (citation and internal quotation marks omitted); *see Nijhawan v. Holder*, 129 S. Ct. 2294, 2303 (2009) (courts can use such documents to determine "which statutory phrase (contained

-7-

within a statutory provision that covers several different generic crimes) covered a prior conviction"); *Torres-Romero*, 537 F.3d at 1158 (referring to the use of the "modified categorical approach" in our circuit).

Defendant contends that his Texas offense was not a crime of violence under the categorical approach and that it would be improper to apply the modified categorical approach to the Texas statute. In district court he argued that "burglary of a habitation" is a broader offense than the offense of "burglary of a dwelling" under the guidelines because the Texas statute encompasses burglary of a "*vehicle* that is adapted for the overnight accommodation of persons," Texas Penal Code Ann. § 30.01(1) (emphasis added). He argued that the guidelines term *burglary of a dwelling* incorporates the generic definition of burglary, which does not encompass burglary of a vehicle. On appeal, however, he has abandoned that argument. Instead, he contends that the Texas statutory offense is broader than burglary of a dwelling because it encompasses burglary of a "structure appurtenant to" a dwelling, *id.*, which could include, say, a tool shed "at a considerable distance from the residence." Aplt. Br. at 23.

Before turning to the merits, we note that our review is only for plain error because Defendant's argument was not raised in district court. *See United States v. Dazey*, 403 F.3d 1147, 1173–74 (10th Cir. 2005).

> To establish plain error, [the Defendant] must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. If all these

conditions are met, a court reviewing the error may exercise discretion to correct it if [4] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 1174 (internal citations omitted). "The defendant has the burden of establishing all four elements of plain error." *United States v. Hall*, 625 F.3d 673, 684 (2010). We may well be able to reject Defendant's argument on any of the four elements of plain-error review, but we limit ourselves to discussion of the first element.

We fail to see any error in the district court's treatment of Defendant's Texas conviction as a conviction for a crime of violence. Although we assume, without deciding, that the Texas statutory offense includes more than burglary of a dwelling under the guidelines, we reject Defendant's contention that this ends the inquiry. He maintains that the modified categorical approach can be applied only if the statute of conviction is a "divisible" one—one that "contains separate element sets, at least one of which would show the prior conviction was necessarily for a qualifying offense and at least one of which would not permit that conclusion." Aplt. Reply Br. at 12–13. Under this definition of *divisible*, he asserts, the Texas statute is not divisible and therefore not amenable to the modified categorical approach.

Rather than relying on Defendant's definition of *divisible*, we will start our analysis with the Supreme Court's description of the predicate for the modified categorical approach: a law that "contains statutory phrases that cover several

different generic crimes, some of which [are crimes of violence] and some of which [are] not." *Johnson*, 130 S. Ct. at 1273. The "statutory phrases" need not be in separate sections, subsections, or paragraphs of the statute, nor need they be long. Indeed, as we shall see, the phrase may apparently even be one taken from a judicial opinion rather than a statute (at least when dealing with common-law crimes).

We draw this conclusion from *Johnson*'s citation, with implicit approval, to lower-court decisions using the modified categorical approach. In *Johnson* the Supreme Court considered whether the Florida offense of battery was a violent felony under the ACCA because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(I). The Court construed *physical force* to require "violent force." *Johnson*, 130 S. Ct. at 1271. Accordingly, conviction of the Florida offense was not necessarily a violent felony because a Florida battery could be a mere touching. *See id.* at 1269–70. The Court rejected the dissent's concerns about the practical effect of its decision by pointing to the availability of the modified categorical approach. *See id.* at 1273. It illustrated the application of that approach to the offense of battery by referring to three lower-court decisions. *See id.* ("Indeed, the Government has in the past obtained convictions under the [ACCA] in precisely this manner. *See*, *e.g.*, [citing three decisions]"). (In

*Johnson* itself the record did not support use of the modified approach. *See id.* at 1269.)

One of the cited opinions was *United States v. Simms*, 441 F.3d 313 (4th Cir. 2006), which considered a Maryland conviction for battery. The Maryland offense is a common-law crime not defined by statute. *See United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998). Maryland court decisions have recognized that battery can be committed in a number of ways, including "kissing without consent, touching or tapping, jostling, and throwing water upon another." *Id.* (internal quotation marks omitted); *accord Simms*, 441 F.3d at 315. Thus, the offense is not necessarily a violent felony. The circuit court, however, looked at the charging document, which accused the defendant of pistol whipping the victim, and upheld the district court's determination that the defendant's battery conviction was for a violent felony.

The other two cited decisions—*United States v. Luque-Barahona*, 272 F. App'x 521 (7th Cir. 2008), and *United States v. Robledo-Leyva*, 307 F. App'x 859 (5th Cir. 2009)—concerned the same Florida battery statute at issue in *Johnson*. The question in *Luque-Barahona* was whether the defendant's prior Florida conviction of battery was a conviction of a violent felony under the ACCA. The Florida statute "provides that a person commits battery if he intentionally causes bodily harm, or if he touches or strikes another person against the will of the other." 272 F. App'x at 523 (internal quotation marks omitted). The statute thus

-11-

"sometimes, but not always, include[s] as an element the use, attempted use, or threatened use of physical force against another." *Id.* (internal quotation marks omitted). The circuit court therefore looked to the account of the offense in the arresting officer's complaint/affidavit, which had been accepted without challenge by defendant's attorney. That document said that defendant had pushed a police officer. *See id.* at 524. The circuit court affirmed the district court's decision that defendant's prior offense had therefore been a violent felony. Similarly, *Robledo-Leyva* held that the defendant's battery conviction was for a violent felony because the charging document accused the defendant of striking the victim with an automobile. *See* 307 F. App'x at 862.

We cannot say that the Supreme Court endorsed every component of the circuit-court decisions in *Simms* and *Luque-Barahona*. But at the least the Court's reference to those decisions suggests that the modified categorical approach can be applied if one can find language in the state statute that includes the elements necessary for an offense to be a violent felony (or, in our case, a crime of violence). That has been this circuit's approach. To give just one example, in *United States v. Hill*, 53 F.3d 1151 (10th Cir. 1995), we considered whether the defendant's prior Oklahoma conviction for burglary was a violent felony under the ACCA. The Oklahoma burglary statute included entries into "'any *building* or any part of any building, room, booth, tent, railroad car, *automobile*, truck, trailer, vessel, or other structure or erection.'" *Id.* at 1153

-12-

(quoting Okla. Stat. Ann tit. 21, § 1435) (emphasis added). Because burglary of an automobile does not come within the generic definition of burglary under the ACCA, the government could not prevail under the categorical approach. But the charging document showed that defendant had burglarized a building (which is a species of generic burglary), so we held that defendant had been convicted of a violent felony. *See id.* at 1154–55. The "statutory phrase" on which we relied was just the word "building" in the Oklahoma law.

In this case the Texas statutory definition of *habitation* includes "a structure . . . that is adapted for the overnight accommodation of persons." Texas Penal Code Ann. § 30.01(1). Such a structure is undoubtedly a dwelling within the meaning of USSG § 2L1.2 cmt. 1(B)(iii). To be sure, the definition goes on to include "each structure appurtenant to or connected with the structure." Texas Penal Code § 30.01(1)(B). But even if we were to adopt Defendant's view that this addition to the definition includes more than dwellings, the modified categorical approach would permit the government to show that a defendant's prior conviction was for the burglary of a "structure . . . that is adapted for the overnight accommodation of persons," and hence a crime of violence. The government would merely be establishing the "statutory phrase . . . [that] covered [the] prior conviction." *Nijhawan*, 129 S. Ct. at 2303. It is irrelevant that here the statutory phrase is in a definition section of the state penal code, rather than in a section stating a criminal offense. The definition language is incorporated into

-13-

the offense section. The crime would be identical if the definition had been inserted into the offense section. *See Ganzhi v. Holder*, 624 F.3d 23, 30 (2d Cir. 2010) (the modified categorical approach is appropriate "where a definitional section applicable to the statute of conviction" contains some statutory phrases consistent with the definition of aggravated felony under the Immigration and Nationality Act and some that are not). Hence, we conclude that the modified categorical approach may apply to a conviction of the Texas offense of burglary of a habitation.

Under the modified categorical approach, the district court committed no error because it was informed by defense counsel that the object of Defendant's burglary was an apartment. Counsel's statement appears in the following colloquy at sentencing:

> The Court: Don't we have particularized evidence in this case that the—either in the charging document—was he convicted, or did he plead guilty of that Texas charge?
>
> Mr. Leedy [defense counsel]: Pled guilty, Your Honor.
>
> The Court: Was there evidence in his guilty plea or in the charge that the structure involved was an apartment?
>
> Mr. Leedy: Your Honor, yes, there is. However, that's precluded from the Court's analysis under *Taylor*. The modified categorical approach requires the Court to look only to the definition of the crime under the state statute, not to the factual basis for that crime.

R., Vol. 2 at 36–37. To be sure, the modified categorical approach allows reference only to "the terms of the charging document, the terms of a plea

-14-

agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. But defense counsel's admission suffices under this test. *See Luque-Barahona*, 272 F. App'x at 524 (relying on defense counsel's admission to establish that prior offense was violent felony). Surely the document itself need not be produced in court if defense counsel stipulates to its contents. Courts could not function properly if concessions by counsel cannot be relied upon.

Although Defendant argues on appeal that the admission was ambiguous, we disagree. He suggests that defense counsel was referring to ordinary evidence (such as a victim's statement), which cannot be used under the modified categorical approach. But the district court specifically inquired about "evidence in [Defendant's] guilty plea or in the charge." "[E]vidence in [the] guilty plea" could only refer to an admission by Defendant during his plea colloquy (what other evidence is there "in" a guilty plea?); and "evidence . . . in the charge" could only be an allegation in the charging document. Both an admission by the defendant in pleading guilty and (what amounts to the same thing) an allegation in the charging document to which the defendant pleaded guilty can be relied on under the modified categorical approach. *See Shepard*, 544 U.S. at 26. At the least, defense counsel should have alerted the court to a different meaning of his

-15-

concession if he was referring to something besides an admission by Defendant or an allegation in the charging document.

Defendant also suggests that because the Texas definition of *habitation* includes a "structure appurtenant to or connected with" a habitation, his counsel's use of the term *apartment* could have referred to such a structure, rather than the apartment itself. Clever. But not convincing. We are confident that no one in the courtroom so understood defense counsel.

Finally, Defendant argues on appeal that he should not be bound by the concession of his attorney because the concession was wrong. He seeks to supplement the record on appeal with a copy of the charging document (to show that it does not mention an apartment) and an affidavit that there are no stenographic notes of the Texas plea colloquy. But we are not inclined to accept this argument. Defendant has not directed our attention to any case in which we have reversed a judgment because the district court incorrectly relied on an inaccurate statement by the appellant's trial counsel, and we see no reason to break that new ground. Such a ruling would create opportunities for mischief that we could not countenance. We therefore deny the motion to supplement.

Thus, we hold that the district court committed no error in calculating Defendant's offense level.[1]

_____

[1]We also note that even if the district court could not consider defense counsel's concession in determining Defendant's offense level, it could be proper

(continued...)

## B.    Fast-Track Program

It is not clear whether the district court considered disparities arising out of fast-track programs.  Near the conclusion of the hearing it said that "[e]ven though the Court is disregarding the disparity of the Fast Track, it can't ignore the fact that it's there."  R., Vol. 2 at 66.  We will, however, assume on appeal the accuracy of Defendant's contention that the court refused to consider this disparity.  Nevertheless, there was no error.

Our recent decision in *Lopez-Macias*, 661 F.3d at 491, held that district courts can consider fast-track sentencing disparities but that the district court need not do so in the absence of "a minimum showing that a defendant charged with the same crime in a fast-track district would qualify for fast-track treatment," *id.* at 494.  We found no need to decide the extent of a defendant's burden because the defendant in that case did not make any showing at all.  *See id.* at 494–95.  Here, too, Defendant has made no such showing.  Accordingly, he is not entitled to relief.

---

[1](...continued)
to consider such evidence in deciding whether to vary upward from the guidelines range once that range was calculated correctly.  A judge could reasonably decide that to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), the specifics of the offense should be considered so that the sentence would not depend upon the fortuity of the details in the language of a statute that the defendant had previously violated.

## III. CONCLUSION

We AFFIRM the district court's sentencing, and DENY the appeal.