FILED
United States Court of Appeals
Tenth Circuit

November 7, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

No. 10-1494

MARTIN LOPEZ-MACIAS, a/k/a
MARTIN MACIAS-LOPEZ,

      Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CR-00179-PAB-1)**

May Kim, Special Assistant United States Attorney (John F. Walsh, United States
Attorney, Paul Farley, Assistant United States Attorney, on the brief), Denver,
Colorado, for Plaintiff-Appellee.

John T. Carlson, Assistant Federal Public Defender (Raymond P. Moore, Federal
Public Defender, with him on the brief), Denver, Colorado, for Defendant-Appellant.

Before **MURPHY**, **BALDOCK**, and **SILER**,[*] Circuit Judges.

**BALDOCK**, Circuit Judge.

In the 1990s, federal prosecutors handling large numbers of illegal re-entry

and other immigration offenses developed early disposition or "fast-track" programs

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge, Sixth Circuit,
sitting by designation.

in states along the United States border with Mexico. In 2003, Congress endorsed such programs, apparently for border districts and elsewhere, in a broadly-worded provision of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"). Pub. L. No. 108-21, 117 Stat. 650 (2003). Congress specifically instructed the United States Sentencing Commission to promulgate "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." Pub. L. No. 108-21, § 401(m), 117 Stat. at 675. In response, the Sentencing Commission promulgated U.S.S.G. § 5K3.1: "Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the [Attorney General] and the United States Attorney for the district in which the court resides."

This sentencing appeal presents us with two questions related to the presence of fast-track programs in some federal districts, but not others. The first question is whether a sentencing court in a non-fast-track district has the discretion to consider sentence disparities caused by the existence of fast-track programs in other districts, and, based thereon, vary from the applicable guideline range for a defendant charged with an immigration offense. If so, the second issue is whether the apparently nebulous eligibility requirements for fast-track programs relieve a defendant charged with an immigration offense in a non-fast-track district of the

2

burden of showing entitlement, at least in some sense, to sentencing consistent with a fast-track program. We hold that (1) where the circumstances warrant, a district court in a non-fast-track district has the discretion to vary from a defendant's applicable guideline range based on fast-track sentence disparities, but (2) a defendant bears the initial burden of showing entitlement, in some sense, to a variance based on fast-track sentence disparities. Given the facts presented here, however, we need not now decide the precise extent of a defendant's burden.

I.

Following a routine traffic stop, Colorado law enforcement officials arrested Defendant Martin Lopez-Macias, a citizen of Mexico, on suspicion of marijuana trafficking. Immigration and Customs Enforcement officials interviewed Defendant while he was in Colorado custody and determined his illegal status. A federal grand jury subsequently indicted Defendant in the District of Colorado for illegal reentry into the United States after deportation following an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). In 1993, a California state court convicted Defendant for selling a controlled substance, heroin, which qualifies as an aggravated felony pursuant to 8 U.S.C. § 1101(43).

Defendant and the Government entered into a plea agreement. Defendant agreed to plead guilty to the crime as charged in the indictment and the Government agreed to recommend a three-point reduction of offense level for acceptance of responsibility. The parties also agreed that the provisions of 18 U.S.C. § 3553

3

governed the district court's consideration of Defendant's sentence. Subsection (a) lists numerous factors that a district court must consider in imposing a sentence that is "sufficient, but not greater than necessary" to comply with the enumerated sentencing purposes. Among those factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[1] 18 U.S.C. § 3553(a)(6). After his plea hearing, Defendant filed a "Motion for Non-Guideline Statutory Sentence," in which he requested a sentence of time served. Defendant argued that U.S.S.G § 5K3.1 created unwarranted sentence disparities within the meaning of subsection (a)(6) between defendants convicted of immigration offenses in non-fast-track districts, like himself, and defendants convicted of similar offenses in fast-track districts.

The district court denied Defendant's motion to vary from the recommended guideline sentence on alternative grounds. First, the court relied on our holding in United States v. Martinez-Trujillo, 468 F.3d 1266 (10th Cir. 2006), to deny Defendant's motion. In Martinez-Trujillo, we held as a matter of law that sentence disparities created by fast-track programs were not "unwarranted" within the meaning of § 3553(a)(6). In the alternative, the district court denied Defendant's

---

[1] In sentencing a defendant, a district court generally follows a three-step process in which it (1) calculates and considers the Guideline range; (2) calculates any departures from the Guideline range; and (3) considers the relevant 18 U.S.C. § 3553(a) factors. See, e.g., United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). As part of step three, a district court, at minimum, " must refer to the list of factors contained in 18 U.S.C. § 3553(a)." United States v. Morales-Chaires, 430 F.3d 1124, 1128 (10th Cir. 2005).

motion because he failed to present any evidence that he would be eligible for a fast-track program in a participating district. Based upon a finding that Defendant's recommended guideline range was "sufficient, but not greater than necessary," to achieve § 3553(a)'s sentencing objectives, the district court sentenced Defendant to 37 months imprisonment, the low end of the range.[2] Defendant appealed. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a)(2), and uphold Defendant's sentence for reasons that follow.

## II.

On appeal, Defendant claims his sentence is unreasonable because the district court erred in refusing to consider, as a matter of fact, whether sentence disparities between himself and defendants sentenced for immigration offenses under fast-track programs were "unwarranted" within the meaning of § 3553(a)(6). To support his claim, Defendant posits two arguments. First, Defendant argues that, given intervening Supreme Court precedent, our decision in Martinez-Trujillo is no longer viable and a district court now has the discretion to vary from the guidelines based

---

[2] Section 3553(a)(2) directs a district court in determining an appropriate sentence to consider "the need for the sentence imposed–"

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

5

on fast-track sentence disparities. Second, Defendant argues that because the Government shields the qualifications for fast-track disposition from defendants in non-fast-track districts, the Government should bear the burden of proving he is ineligible for a variance based on fast-track sentence disparities.

We ultimately review Defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007). Reasonableness "has a procedural and substantive component." United States v. Martinez, 610 F.3d 1216, 1223 (10th Cir. 2010). Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, *failing to consider the § 3553(a) factors*, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51 (emphasis added). On the other hand, "[a] challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence."[3] United States v. Smart, 518 F.3d 800, 804 (10th Cir. 2008). In this case, we review Defendant's sentence for procedural error because Defendant challenges

---

[3] The Sixth Circuit has observed that some courts have described failure to consider the § 3553(a) factors as both procedural and substantive. The court accurately noted that this "blurring may result from the fact that such an error can come in at least two forms: the procedural error of failing actually to consider all the relevant factors, and the substantive error of imposing a sentence that does not fairly reflect those factors." United States v. Camacho-Arellano, 614 F.3d 244, 247 n.1 (6th Cir. 2009).

the "method by which the sentence [was] calculated." United States v. Wittig, 528 F.3d 1280, 1284 (10th Cir. 2008). That is to say, Defendant challenges the district court's failure in the context of his case to even consider whether a sentence disparity caused by the existence of fast-track programs in some districts but not others is factually "unwarranted." We review the district court's legal conclusions in this regard de novo and its factual findings for clear error. United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008).

## A.

The district court first denied Defendant's motion for a variance because we have "held repeatedly that the disparity created by the existence of 'fast track' programs in other districts is not an unwarranted disparity within the meaning of [§] 3553(a)(6)." Record volume (Rec. vol.) II, at 54. The district court's assessment of Tenth Circuit case law undoubtedly is correct. In Martinez-Trujillo, we held as a matter of law that sentencing disparities caused by the existence of fast-track programs in some districts were not "unwarranted" under § 3553(a)(6), because such disparities were congressionally authorized. Martinez-Trujillo, 468 F.3d at 1268. We recognized that a district court must consider the entirety of the § 3553(a) factors, including factor (a)(6) regarding unwarranted sentence disparities, in imposing sentence, but opined that a disparity is not unwarranted where Congress specifically authorizes the disparity, such as the fast-track disparity in the PROTECT Act. Id.; accord United States v. Jarrillo-Luna, 478 F.3d 1226, 1231 (10th Cir.

7

2007); United States v. Martinez-Macias, 472 F.3d 1216, 1219 (10th Cir. 2007). Of course, Martinez-Trujillo and its progeny bind us "absent en banc reconsideration or a superseding contrary decision by the Supreme Court." United States v. Killion, 7 F.3d 927, 930 (10th Cir. 1993).

Defendant submits that Kimbrough v. United States, 552 U.S. 85 (2007), is that "superseding contrary decision." In Kimbrough, a case addressing the disparity between guideline ranges for crack and powder cocaine offenses, the Supreme Court held that a district court had the discretion to vary from the recommended guideline range for a crack cocaine offense where the court determined such range was greater than necessary to achieve the sentencing objectives of § 3553(a). In other words, because the sentencing guidelines are advisory, district courts have the discretion to vary from those guidelines based on policy disagreements with them. In Spears v. United States, 555 U.S. 261, 265–66 (2009) (per curiam), the Court made plain Kimbrough's point; namely that regardless of individualized circumstances, "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on policy disagreements with those Guidelines."

At the time of Kimbrough, the applicable guideline provision treated one gram of crack cocaine as equivalent to 100 grams of powder cocaine. The Sentencing Commission developed this guideline by looking to the Anti-Drug Abuse Act of 1986 ("ADAA"), 100 Stat. 3207. The ADAA "treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine" by providing a five-year mandatory

8

minimum sentence "to any defendant accountable for 5 grams of crack or 500 grams of powder" and providing a ten-year mandatory minium sentence "to any defendant accountable for 50 grams of crack or 5,000 grams of powder." Kimbrough, 552 U.S. at 96. The government argued that while the guidelines are advisory, the 100-to-1 crack to powder ratio guidelines were an exception to a district court's sentencing discretion because the ratio was a congressional policy determination binding on the courts. Id. at 101–02. The Supreme Court rejected that argument because it lacked grounding in the text of the ADAA. The Court observed that the "statute, by its terms, mandates only maximum and minimum sentences." Id. at 102. Congress gave no directive "about the appropriate sentences within [the statutory minimums and maximums]" and the court declined "to read any implicit directive into that congressional silence." Id.

Absent a statutorily-mandated sentencing policy, Kimbrough authorized district judges to vary from the guidelines based on policy disagreements with those guidelines and not simply based on an individualized determination. As Spears makes clear, a district court pre-Kimbrough had the authority to issue a variance based on an individualized determination pursuant to § 3553(a)(6). However, in Martinez-Trujillo, we barred district courts from considering this disparity in the fast-track context.

Following Kimbrough's lead, we see nothing in the language of the PROTECT Act that reflects a congressional intent to restrict a district court's discretion in

9

sentencing a defendant outside a fast-track district based on the sentencing of similarly-situated defendants inside a fast-track district.[4]   Undoubtedly, Congress provided "the Attorney General the ability to establish early disposition programs district by district, and instructed the Sentencing Commission to promulgate a guideline to implement those programs."  United States v. Reyes-Hernandez, 624 F.3d 405, 418 (7th Cir. 2010).  But Congress "certainly did not explicitly forbid non-

---

[4] We recognize that the fast-track disparity differs from the cocaine disparity. We reject, however, any suggestion that Kimbrough is limited to the crack cocaine context.  See United States v. Friedman, 554 F.3d 1301, 1311 (10th Cir. 2009) (applying Kimbrough's rationale in the context of a policy disagreements over the career offender guidelines); see also United States v. Lente, 323 F. App'x 698, 712–13 (10th Cir. 2009) (unpublished) (Holmes, J., concurring) (discerning no principled basis to restrict Kimbrough to the crack cocaine context), abrogated on other grounds by United States v. Story, 635 F.3d 1241 (10th Cir. 2011).  As we will discuss in more detail below, while the rationale for allowing the district court to consider a variance based on the disparity is the same as Kimbrough—a policy disagreement with the Guidelines—proving a sentencing disparity is not the same. In the cocaine cases, the Supreme Court had no need to impose a burden on either party.  The drug quantity tables in the Guidelines created a 1:100 ratio.  A defendant convicted of possession of one gram of crack did not need to prove that a disparity existed between him and a defendant convicted of possession of one gram of powder. The guidelines automatically instituted a sentence 100 times greater for the defendant convicted for possession of crack than the defendant convicted for possession of powder.  Thus, the disparity was obvious and automatically imposed by a district court.  Fast-track presents an entirely different scenario in that a defendant convicted of illegal entry by a removed alien in Colorado, a non-fast-track jurisdiction, cannot simply point to the Guidelines and say, "If I was sentenced in New Mexico, a fast-track jurisdiction, my sentence would be reduced by four levels." We do not know if a New Mexico Assistant United States Attorney would automatically recommend a similarly situated defendant in Colorado that four-level decrease.  Like any defendant seeking a downward variance, the defendant in Colorado must show that defendants with similar records convicted of similar crimes would receive the benefit of Guideline § 5K3.1 because the sentence did not comport with the 3553(a) factors.

10

fast track districts from taking into account the effect of fast-track dispositions under the § 3553(a) factors." Id. Similar to the Supreme Court's reading of the ADAA, we simply cannot locate in the PROTECT Act "an implicit restriction on a district court's sentencing discretion."[5] United States v. Rodriguez, 527 F.3d 221, 229 (1st Cir. 2008). Accordingly, our holding in Martinez-Trujillo must give way in light of Kimbrough.

Thus, we conclude that Kimbrough's holding extends to a policy disagreement with Guideline § 5K3.1 and further conclude that Martinez-Trujillo and its progeny must be overruled because a district court's *consideration* of a fast-track disparity "is not categorically barred as a sentence-evaluating datum within the overall ambit of § 3553(a)." Id. As the First Circuit explained, an intent to restrict the sentencing discretion of a district court in the context of fast-track disparity may be drawn from the statute "only by heavy reliance on inference and implication about congressional intent—a practice that runs contrary to the Court's newly glossed approach." Id. at 229–30. Just as the Supreme Court in Kimbrough declined to conclude that the crack to powder cocaine ratio was beyond the reach of § 3553(a), we conclude that fast-track disparity is not beyond the reach of § 3553(a).[6] We hold that where the

_____

[5] We note that a panel of this Court in an unpublished opinion has previously indicated that Kimbrough abrogated Martinez-Trujillo. See United States v. Rodriguez-Galaviz, 408 F. App'x 208, 211 (10th Cir. 2011) (unpublished) ("Although the district court had discretion under Kimbrough . . . to grant a variance in light of the absence of a fast-track program, it declined to do so . . . .").

[6] Prior to Kimbrough, our sister circuits uniformly agreed that fast-track sentence disparity was not unwarranted because "the disparity was specifically
(continued...)

11

circumstances warrant, a district court in a non-fast-track district has the discretion to vary from a defendant's applicable guideline range based on fast-track sentence disparities; however, we emphasize that a district court still must calculate the

_____

⁶(...continued)
authorized by Congress in the PROTECT Act." See Martinez-Trujillo, 468 F.3d 1266, 1268 (collecting cases). Since Kimbrough, our sister circuits have differed as to whether Kimbrough allows a district court to conclude that the disparity produced by the existence of fast-track programs may be "unwarranted." The First, Third, Sixth, Seventh and Eighth Circuits have set aside their prior precedents as a result of Kimbrough, while the Fifth, Ninth, and Eleventh Circuits have declined to do so. Of course, those circuits rejecting the proposition that Kimbrough allows a district court to consider fast-track disparity in sentencing reason that Kimbrough addressed only a district court's discretion to vary from the guidelines based on a disagreement with guideline, rather than congressional, policy. Their reading of the PROTECT Act simply differs from ours. Compare United States v. Rodriguez, 527 F.3d 221, 227 (1st Cir. 2008) ("Kimbrough lends a new flexibility to the scope of the district courts' sentencing authority and, in the bargain, removes a formidable obstacle to the consideration of matters such as fast-track disparity."); United States v. Arrelucea-Zamudio, 581 F.3d 142, 149 (3d Cir. 2009) ("By logical extension we believe a judge may also consider the disparate treatment of immigration defendants that is created by fast-track programs in determining whether a Guidelines sentence is greater than necessary under the § 3553(a) factors."); United States v. Camacho-Arellano, 614 F.3d 244, 248 (6th Cir. 2010) ("[A]ny such rule [that sentencing judges may not reduce sentences based on fast-track disparity] does not survive the Supreme Court's decision in Kimbrough."); United States v. Reyes-Hernandez, 624 F.3d 405, 421 (7th Cir. 2010) ("Our holding merely permits the sentencing judge to consider a facially obvious disparity created by fast-track programs among the totality of § 3553(a) factors considered."); United States v. Jimenez-Perez, --- F.3d ----, 2011 WL 4916585, *6 (8th Cir. Oct. 18, 2011) ("[W]e hold that the Supreme Court's decision in Kimbrough undermined this circuit's precedent . . . ."); with United States v. Gomez-Herrera, 523 F.3d 554, 563 (5th Cir. 2008) ("[Prior holdings] that a district court may not vary from the Guidelines on the basis of sentencing disparity intended by Congress were not called into question by . . . Kimbrough."); United States v. Gonzalez-Zotelo, 556 F.3d 736, 740 (9th Cir. 2009) ("Kimbrough did not undercut our precedent holding that fast-track disparities are not 'unwarranted' so as to permit their consideration under § 3553(a)(6)."); United States v. Vega-Castillo, 540 F.3d 1235, 1238–39 (11th Cir. 2008) ("Kimbrough never discussed [prior fast-track cases], or otherwise commented on non-crack cocaine disparities, and so Kimbrough did not expressly overrule [prior precedent].").

12

applicable Guideline range without the four level benefit of § 5K3.1, consistent with the Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005). But our holding makes clear that district courts should not categorically exclude consideration of the absence of a fast-track program as they were required to do under our holding in Martinez-Trujillo.

In this case, Defendant challenged the disparity as an "unwarranted" disparity pursuant to § 3553(a)(6). We believe that, consistent with Kimbrough, a district court is not limited to consideration of that factor, but instead should consider the totality of the sentencing statute. Kimbrough, 552 U.S. at 108. In Kimbrough, the Supreme Court stated that the district court "must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Id. at 91. The court went on to hold that "[i]n making that determination, the judge may consider the disparity between the Guidelines treatment of crack and powder cocaine offenses." Id. "To reach an appropriate sentence . . . disparities must be weighed against the other § 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself." Id. at 108. In addition, "district courts must take account of sentencing practices in other courts." Id. Accordingly, a district court should engage in a "holistic inquiry" of the § 3553(a) factors in determining whether a defendant is entitled to a variance. Rodriguez, 527 F.3d at 228. Our holding today simply allows a district court to acknowledge a policy disagreement with Guideline § 5K3.1, and then *consider* the

13

disparity between the Guidelines treatment of a defendant in a fast-track district versus a defendant in a non-fast track district in light of all of the 3553(a) factors to determine whether a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing.[7]

B.

The district court ruled as an alternative to its application of <u>Martinez-Trujillo</u> that even if it had the discretion to consider fast-track disparity, no unwarranted disparity exists in Defendant's case. The district court based its conclusion on Defendant's failure to provide *any* evidence that he would qualify for a fast-track program in any other district. The court declined to reduce Defendant's sentence

---

[7] In <u>Kimbrough</u>, the Supreme Court did not find the 100:1 ratio violated the sentencing statute nor did the Supreme Court find an unwarranted disparity between the crack and powder cocaine Guidelines. Rather, the Supreme Court allowed a district court to have a policy disagreement with those Guidelines. Likewise, in the present context, we note that a district court may deny a defendant's request for a variance based on an alleged fast-track disparity solely by stating the court has no policy disagreement with USSG § 5K3.1. Logically, because a district court *may* base a variance on a policy disagreement with a particular Guideline, the district court is also free to agree with the policy reflected in that Guideline. This does not mean, however, that when presented with a request for a variance, the district court may disregard its responsibility to conduct an individualized determination pursuant to 18 U.S.C. § 3553(a) to determine that the sentence is not greater than necessary to achieve the sentencing goals, such that it reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public, among other factors. In application, when presented with a request for a variance based on the fast-track disparity, the district court in a non-fast-track state may state that it acknowledges that the disparity exists, but that the court agrees with the policy underlying § 5K3.1. After an individualized assessment, the district court may find that the sentence, without § 5K3.1, reflects the goals of the sentencing statute and that the disparity created by § 5K3.1 is not unwarranted because of the special circumstances faced by courts in the fast-track districts.

14

based upon dispositions given to defendants who do qualify for fast-track dispositions where Defendant had provided no evidence that he too would qualify. That brings us to our next question, namely, whether Defendant, as movant, has the initial burden of showing that he is eligible, at least in some sense, for sentencing consistent with a fast-track program.

At his sentencing hearing, Defendant asserted he did not bear the burden of proving eligibility for a program about which the Government does not publish the criteria for eligibility. Noting that Defendant had moved for a variance, the district court asked Defendant about the existence of any "anecdotal" evidence. Presumably, by the use of the term "anecdotal," the district court was referring to evidence of similarly situated defendants in fast track jurisdictions. Defendant responded that he could not answer whether he was eligible for a fast-track program. Defendant suggested the court ask the Government that question. Defendant simply asserted that because of the high volume of illegal re-entry cases in the district, he should be eligible for the fast-track program. With that, Defendant asserted the Government bore the burden of proving he was ineligible for fast-track sentencing.

The district court asked Defendant what type of people receive fast-track dispositions. Defendant again stated that he did not have access to that information and that the court should ask the Attorney General. The district court then followed up, asking whether Defendant had *access* to "anecdotal" evidence. Defendant's counsel responded that she "might be able to find anecdotal evidence," but she did not see why she should be required to provide that information to the court. Rec.

15

vol. II at 46. The court observed that the motion for a variance was Defendant's. Counsel responded:

> I am asking the Court to simply consider the absence of the program and the disparity that the program is creating and its use is creating in districts elsewhere. Whether or not in this district [Defendant] would be eligible for the program is a question [Defendant] cannot answer. Ask the government whether or not [Defendant] would be eligible for the "fast track" program. That's my answer to that question.

Id.

We acknowledge at the outset that Defendant's contention is not without some force. The Government, or more accurately the Department of Justice, refuses to release its criteria for determining eligibility for fast-track disposition. This inexplicable position leaves defendants charged with immigration offenses in non-fast-track districts in a quandary when forced to compare themselves to defendants charged with similar offenses in fast-track districts. The Government has provided no reasoned rationale for its steadfast opposition to shedding light on the factors it considers in determining program eligibility. But the Government's silence does not license a defendant to "sit on his thumbs," make no inquiry, and present no evidence that he is entitled to a variance based on fast-track disparity.

In this Circuit the law is well established that "the defendant shall bear the burden of proof for sentence decreases." United States v. Williams, 374 F.3d 941, 947 (10th Cir. 2004) (quoting United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir. 1990)). The fast-track policy disagreement does not allow a district court to automatically grant a variance without the defendant somehow showing that he is

16

entitled to the variance. In the cocaine context, a district court was instructed to determine whether a within-Guidelines sentence was greater than necessary to serve the objectives of sentencing, but the disparity was obvious because the 100:1 ratio was built into the Guidelines. In the present case, because not every illegal reentry defendant would necessarily qualify for fast-track disposition, after a district court articulates its policy disagreement with § 5K3.1, Defendant must bear some burden of proof to show he is entitled to a variance.

Consistent therewith, Defendant surely must make a minimum showing that a defendant charged with the same crime in a fast-track district would qualify for fast-track treatment. For example, Defendant might have contacted federal public defender offices in districts with fast-track programs to inquire about program eligibility requirements. Defendant also might have examined plea agreements of similarly situated defendants in fast-track districts. And those suggestions surely do not exhaust the possibilities of inquiry. Indeed, Defendant acknowledged he "might be able to find anecdotal evidence," but made no effort to look.[8]

As a consequence of Defendant's lack of industry, we need not determine today the exact showing a defendant must make in order to carry his initial burden of justifying a variance based on fast-track disparity beyond the minimum requirement discussed above. Suffice to say we agree with the Third Circuit that a

---

[8] We note that a future defendant challenging the denial of a variance is not foreclosed from presenting his case to this Court. Plea agreements often contain conditional or limited waivers of appellate and post-conviction relief.

"generalized argument" in which a defendant simply points to the disparity created by fast-track programs "is alone not sufficient to justify such a variance."[9] United States v. Arrelucia-Zamudio, 581 F.3d 142, 156 (3d Cir. 2009). That is the very argument Defendant makes here, and we reject it. The district court properly denied Defendant's motion for a variance because the court acknowledged that even if it

[9] Indeed, the only two circuits to have addressed the question presented here have placed the burden of proving entitlement to a variance based on fast-track sentence disparity squarely on the defendant. The Seventh Circuit has stated a district court need not even address a fast-track argument unless a defendant has "shown that he is similarly situated to persons who actually would receive a benefit in a fast-track district." United States v. Ramirez, --- F.3d ----, 2011 WL 2864417, *1 (7th Cir. July 20, 2011). According to the Seventh Circuit:

> [T]he defendant must establish that he would receive a fast-track sentence in at least one district offering the program and submit a thorough account of the likely imprisonment range in the districts where he is eligible, as well a candid assessment of the number of programs for which he would not qualify. Until the defendant meets these preconditions, his "disparity" argument is illusory and may be passed over in silence.

Id. The Third Circuit also places the burden on the defendant. The showing the Third Circuit requires, however, is not as extensive as that required by the Seventh Circuit:

> [A] defendant is not required to show that he is exactly similarly situated to a particular fast-track defendant in another district. [Rather,] to justify a reasonable variance by the district court, a defendant must show at the outset that he would qualify for fast-track disposition in a fast-track district. . . . This type of showing would also be an instrumental factor for a district court in determining under § 3553(a) whether a Guidelines range sentence is greater than necessary to meet the sentencing objectives. The Government obviously would be free to contend to the contrary—that the defendant would not qualify in a fast-track district or that the adjusted range would be different than that suggested by the defendant. . . .

Arrelucia-Zamudio, 581 F.3d at 156–57.

18

could exercise its discretion, Defendant provided the court with no evidence to warrant a variance.

AFFIRMED.