FILED
United States Court of Appeals
Tenth Circuit

December 6, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCONIA LYNN GREEN,

Defendant - Appellant.

No. 11-6321
(D.C. No. 5:10-CR-00079-F-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **HOLLOWAY** and **HARTZ**, Circuit Judges.

Defendant Marconia Green pleaded guilty to three counts of using a

communication facility to facilitate the acquisition of cocaine base. *See* 21

U.S.C. § 843(b). The district court varied upward from the Guidelines sentencing

range of 92–115 months' imprisonment and sentenced Defendant to 130 months'

imprisonment. Defendant argues on appeal that his sentence was both

procedurally and substantively unreasonable, in part because the district court

allegedly promised him a sentence within the Guidelines sentencing range when

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

he pleaded guilty.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Defendant's sentence.

## I.     BACKGROUND

In March 2010 Defendant was indicted in the United States District Court for the Western District of Oklahoma on seven counts of possession with intent to distribute powder cocaine and crack cocaine, *see* 21 U.S.C. § 841(a)(1), and three counts of using a communication facility to facilitate the acquisition of powder cocaine, *see id.* § 843(b).  He reached a plea agreement with the government under which he pleaded guilty to the three communication-facility counts (sometimes called "telephone" counts) and the government dismissed the possession counts.  The agreement provided that 99.5 grams of cocaine base would be attributable to him for sentencing.  The agreement also stated that the maximum penalty was four years' imprisonment on each count, that these sentences could be run consecutively, that the sentencing court was not bound to accept the agreement or the parties' recommendations or stipulations, that the court could impose any sentence up to the statutory maximum, and that Defendant retained the right to appeal a sentence above the Guidelines range found to be applicable to his case.

At Defendant's change-of-plea hearing, the district court sought to ensure that he would understand the proceedings:

COURT: That brings me to one very important point and that is this: If I or anyone else should say or do anything here this afternoon that you do not fully understand or if at any time you would like to have anything explained to you, I want you to interrupt and ask me your question or ask me for any explanation you would like to have and we will go no further until I have answered your question. Will you do that for me?

DEFENDANT: Yes, sir.

R., Vol. 3 at 22. In response to questions by the court, Defendant stated that he had reviewed the written plea agreement with his attorney before signing it and that they had discussed the Sentencing Guidelines and how they might apply to his case. The court also informed Defendant that the Guidelines did not bind it in imposing sentence:

COURT: And once I have determined your advisory guideline range with the help of [defense counsel] and with the help of the Assistant United States Attorney, when they take their positions as to the guidelines, and for that matter, with the help of the probation office, it will be my job to apply the guidelines and then to decide whether I need to sentence within the guidelines or outside of the guidelines; do you understand that?

DEFENDANT: Yes. When you say—you say "outside of guidelines," you mean one way or the other?

COURT: One way or the other, but if I were to sentence you above the guidelines, then you would have the right to appeal; you—

DEFENDANT: Yes, I understand that.

*Id.* at 30–31. Driving home the point about the uncertain nature of Defendant's sentence, the court continued:

COURT: And because I don't have all that information now [about the offense and about Defendant's history and characteristics], I don't know what the consequences of your plea will be. In other words, I don't know what sentence will be imposed in this case. Do you understand that?

DEFENDANT: Yes.

COURT: And since I don't know what sentence will be imposed in this case, you don't know what sentence will be imposed in this case. Do you understand that?

DEFENDANT: Yeah. I been understanding that for a long time.

*Id.* at 32.

Defendant had some difficulty understanding how the 99.5 grams of cocaine base that the parties stipulated to in the plea agreement would affect his sentence. Defense counsel and the district court were at pains to resolve the confusion:

[PROSECUTOR]: And have you agreed pursuant to the plea agreement and stipulated, along with the government, that you are to be held accountable for 99.5 grams of crack cocaine and that is all?

DEFENDANT: Be held accountable for 99—I thought I was being held accountable for the phone count.

[PROSECUTOR]: Yes, sir. And in paragraph 7, there's a stipulation that you would be held accountable for 99.5 grams of crack cocaine.

DEFENDANT: No, I didn't understand that.

[DEFENSE COUNSEL]: Maybe I can be more clear.

COURT: [C]an you give us some background on that?

[DEFENSE COUNSEL]: Yes. He understands that he's being charged with—or my understanding, what we've been talking about in the agreement, is that he's pleading guilty to the understanding that he made three phone calls in the prosecution of the amount of—or made three phone calls for the distribution of powder cocaine, and then eventually converted to crack cocaine, and for guideline purposes, although he is aware that the phone counts carry a statutory maximum of four per year, that he's being held accountable—

COURT: Four years per count.

[DEFENSE COUNSEL]: Four years per count to run consecutive. He understands that. But his guideline range that he's looking at that the government and the defendant, we, have agreed to is 99.5 grams of cocaine base.

COURT: Very well.
    Mr. Green, you just heard what [defense counsel] said; is that right?

DEFENDANT: I heard what he said.

COURT: Okay. And so your intent, I take it, is to plead guilty to these three counts, each of which, standing alone, carries a statutory maximum sentence of four years to do. Do you understand that?

DEFENDANT: Yes, sir.

COURT: But that they can be run consecutive; do you understand that?

DEFENDANT: Yes.

COURT: And that—at the time of sentencing, the Court will be able to take into account the 99.5 grams that have been mentioned here today. Do you understand that?

DEFENDANT: In which way?

COURT: To determine the impact of that on sentencing. Do you understand that?

DEFENDANT: No, I'm not understanding.

COURT: Okay. Perhaps—

DEFENDANT: What it seems like is that I'm pleading—what's going to me right now in my mind, and I may be wrong, but what it seems like is going on to me right now is I'm pleading to the phone counts, but I'm going to be sentenced and punished for the 99.5 grams of crack cocaine.

COURT: As I mentioned to you a few minutes ago, come sentencing, it will be my job to take into account all of the facts that might have a bearing on my determination of a fair and just sentence in this case, regardless of whether you or I or [defense counsel] or [prosecutor] would consider those facts to be good or bad. There usually are some good facts and some bad facts that the judge has to take into account at sentencing. The good facts might include information about your family, letters from your family, and things like that, and the bad facts could include information about the quantity of drugs for which you are accountable. Do you understand that?

DEFENDANT: I understand that part, but I—this—I'm not—the 95-point is not—is not sitting well with me right now, man. I'm just—I don't get it. It's like I'm going to be—it's like I could get sentenced for this and that. That ain't what—that ain't—I'm not understanding that. That's not—

COURT: Well, I tell you what, [defense counsel], would it help for us to have a short recess so you could confer with [Defendant]?

[DEFENSE COUNSEL]: Well, I could just ask him a question.

COURT: Why don't you just go on over there out of microphone range and chat with him briefly.

*Id.* at 42–45. Defendant then conferred with counsel before the following exchange:

COURT: Okay. Very well.

-6-

Now, Mr. Green, at the end of the questions that were asked by [the prosecutor], she made some reference to the 99.5 grams, and you obviously made some comments about that.

Do you understand that—let me make sure I've got this right out of the agreement—that the government and the defendant will stipulate that 99.5 grams of cocaine base is attributable to the defendant. That's what the plea agreement says. And do you understand that?

DEFENDANT: That's for sentencing—for sentencing purposes.

COURT: That's true.

DEFENDANT: I'm not—I guess I understand now. I'm not—

COURT: Well, come *sentencing—on the basis of this plea agreement, come sentencing, I will consider you to be accountable for 99 and a half grams of crack, no more and no less.* Do you understand that?

DEFENDANT: I understand that.

*Id.* at 45–46 (emphasis added).

After entering his formal plea, and just before the hearing concluded, Defendant returned to the issue of how the drug quantity attributed to him interacted with the charges to which he had pleaded guilty. At first, he continued to express confusion:

DEFENDANT: I have a question.

COURT: Surely.

DEFENDANT: Okay. This is where—this is where I'm not agreeing, I'm not understanding. Okay. I pleaded to the three counts, Count 4, Count 6, and Count 8 of the indictment, the use of a telephone. That's the—what I'm pleading guilty to. Okay. Now the 95—it seems like I'm pleading guilty to two things or three things or

four things, whatever the—and the 95, it's like, during sentencing, I'm going to be sentenced for the phone counts and the 99.5 grams of crack. That ain't what I'm trying to do.

COURT: Well, I want you to have an opportunity to discuss that with [defense counsel].

DEFENDANT: We discussed that and if that's what's going to take place, I don't want to do that. This is me, man. Give me a break for a minute. I'm talking to the judge. This is not what I want to do. *If I'm going to get sentenced to the four—the four—the three counts I'm pleading guilty to, plus the 99.5 grams of crack, I don't want to do that.*

[DEFENSE COUNSEL]: There's no plus, though. That's part of—

DEFENDANT: Well, that's what's going on in my mind. Until I get that cleared up in my mind, I'm not going to be satisfied with this, man.

*Id.* at 48–49 (emphasis added). But then the court was able to communicate successfully how the 99.5 grams would come into play:

COURT: Well, I want—I don't want you to walk out of here with any questions in your mind. *The only crimes that you will be adjudicated guilty of in this case are the crimes—the three counts what you've referred to correctly as the telephone counts that you just got through pleading guilty to.*
　　　　Now, those counts—as you have told the Court and [the prosecutor] in response to her questions, those counts involved the use of a telephone to facilitate the distribution of cocaine powder.
　　　　At sentencing, I will consider all conduct that is relevant under the sentencing guidelines, as well as any other information you want me to consider, whether it's good or bad.
　　　　*So at sentencing, I will be in—I will be not just entitled, but obligated, to at least consider the effect of your involvement with the possession or distribution of cocaine powder, of crack cocaine, or any other—any other, for that matter, drugs that are—*

DEFENDANT: Plus the phone counts.

COURT: *And that is for the purpose of determining the sentence on the telephone count.*

DEFENDANT: *Like the 94.5, that's going to determine the guideline range for the sentencing of the three counts—let me talk to the judge, please.*

[DEFENSE COUNSEL]: Please talk to the judge.

COURT: *You're exactly right. You've got it exactly right, Mr. Green.*

DEFENDANT: I mean, you all don't need to be harsh or nothing like that, but my mind don't . . . and like, now, this what makes me upset because he won't back up and let me get an understanding on my own, and I'm about to go off on him if he don't just, you know, let me—and I don't want to do that, but I'm trying to get an understanding.

COURT: Surely.
        And from what you have told me, let me reassure you, you've got it exactly right.

[DEFENSE COUNSEL]: Thank you, Your Honor.

DEFENDANT: Okay.

COURT: Okay.

DEFENDANT: You know, I'm just—I'm just saying, I can do some things on my own. I mean, I'm in jail, but I—they said I was crazy, not dumb.

COURT: *So do you understand that the only sentences that will be imposed in this case will be the sentences on the three telephone counts to which you have pled, but one of the things that the Court will take into account is the 99.5 grams of crack cocaine?*

DEFENDANT: *For guidelines purposes.*

COURT: *For guidelines purposes, precisely. Are we together on that?*

DEFENDANT: *No more and no less.*

COURT: *No more and no less than 99.5 grams of crack; are we together on that?*

DEFENDANT: *Yes.*

COURT: Very well.

*Id.* at 49–52 (emphases added).

The probation office's presentence investigation report (PSR) ignored the plea agreement and attributed 184 grams of crack cocaine to Defendant in calculating his offense level under the Guidelines. Defendant objected, and at sentencing, with no opposition from the government, the district court sustained the objection and used 99.5 grams. Defendant's Guidelines range was 92–115 months' imprisonment. The court, however, varied upward, imposing a sentence of 130 months' imprisonment.

The district court expressed its reasons for the variance shortly before imposing sentence:

COURT: Mr. Green, as I mentioned earlier this afternoon, by my conservative count, I am the 18th judge that you've stood in front of. It seems reasonably likely that I'm the 18th judge that you've stood in front of and—at least the 18th judge that you've stood in front of and asked for lenience, asked for another chance. Those—that request rings hollow with the Court. *You're a killer, you're a malingerer*, you are a recidivist crack dealer, you have stood before this court this afternoon and expressed concern for yourself and your

-10-

family and your kids, but not the victims whose lives you have ruined by dispensing this horrible substance.

*Id.* at 68 (emphasis added). After Defendant interjected that he regretted his mistakes and had never before asked a judge for leniency, the court continued:

> COURT: I am quite well-satisfied that the sentence I imposed will, in all probability, simply be an interruption in your criminal career. It's clear from the information I have before me that the law does not significantly restrain your conduct. The predominant reasons for the sentence I'm about to impose are the need to impose a just punishment, the need for a deterrence, and the need for incapacitation; in other words, the need to prevent you from continuing your criminal career.
>
> I am going to impose a sentence above the top of the advisory guideline range, but not the maximum. *The sentence I'm about to impose is a term of 130 months, which I quite readily conclude, taking into account all the statutory factors, which I will not burden the record with at this time, is a sentence which is sufficient but not greater than necessary to satisfy the statutory objectives of sentencing.*

*Id.* at 69–70 (emphasis added).

The court's description of Defendant as "a killer" was apparently based on a manslaughter conviction. And the use of the term "malingerer" was apparently based on (1) a competence evaluation that yielded a diagnosis that included malingering—"the intentional production of false or grossly exaggerated psychological or physical symptoms, motivated by, in addition to other things, evading criminal prosecution," *id.*, Vol. 2 at 68; and (2) the contrast between Defendant's statements earlier in the case, when he had "presented himself to the Court as being so mentally limited . . . that he just could not understand the

-11-

situation that he was in," and statements in letters to the court by Defendant's family members that he was "very smart," had a deep mind, and possessed "wisdom." *Id.*, Vol. 3 at 61.

## II. DISCUSSION

Defendant's opening brief states his one issue for appeal as follows: "The upward variance of the [district court] to a sentence of 130 months incarceration is unsupported by the record and is unreasoned, unreasonable, excessive, and greater than necessary. Furthermore, Mr. Green was told at plea that his sentence would be 92–115 months, no more, no less." Aplt. Br. at 2 (capitalization omitted). We begin by addressing the first sentence of this statement.

We review Defendant's challenge to the reasonableness of his sentence under an abuse-of-discretion standard. *See United States v. Lopez-Macias*, 661 F.3d 485, 488–489 (10th Cir. 2011). Reasonableness has both procedural and substantive components. *See id.* at 489. A district court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* (emphasis and internal quotation marks omitted). A challenge to the substantive reasonableness of a sentence is one based on whether the sentence can be reasonably justified by the § 3553(a) factors. *See United*

*States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008). We will not disturb a district court's sentence on the ground of substantive reasonableness unless the sentence "exceed[s] the bounds of permissible choice" and falls outside "the realm of . . . rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted).

It is not clear what procedural error Defendant is alleging. He suggests that the district court was biased against him, but the suggestion has no support in the record other than adverse rulings by the court. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Adverse rulings alone do not demonstrate judicial bias."). He also seems to assert that the court increased his sentence because of the way that his attorney litigated the case, but again we find no supporting evidence. Another argument mentioned in passing is that the court "failed to address [Defendant's] need for correctional treatment." Aplt. Br. at 19. We reject that argument because the court said all that was required on that matter when it explained its sentence and stated that it had considered all the statutory factors. *See United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006) ("The sentencing court . . . is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of [those] factors." (internal quotation marks omitted)). The only other procedural argument that he may be raising is that § 3553(a) did not permit the court to consider his alleged malingering.

Surely, however, fabricating mental incompetence goes to a defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1).

As for the contention that Defendant's sentence was substantively excessive, we will reverse a sentence as substantively unreasonable only if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (internal quotation marks omitted). Defendant's 130-month sentence cannot be so characterized. It was but 15 months above the Guidelines range. A reasonable jurist could properly decide that Defendant's life of crime and lack of remorse fully justified the increase.

Defendant fares no better with the contention raised in the second sentence of his issue on appeal. His counsel asserts that during the change-of-plea hearing the district court told him "that his sentence would be 92–115 months, no more, no less." Aplt. Br. at 2, 11 (capitalization omitted). We expect more candor from members of the bar. The numbers *92* and *115* were never uttered during the hearing. The court said only that the quantity of cocaine used to calculate the Guidelines sentencing range would be 99.5 grams, but it did not state what the range would be, and it repeatedly informed Defendant that it could sentence above that range. We reject Defendant's claim as contrary to the record.

To the extent that Defendant argued in his reply brief and at oral argument that his claim is really that his plea was involuntary because he misunderstood the district court regarding his possible sentence, we reject that argument as well.

-14-

Arguments not raised in the opening brief are waived. *See United States v. Bass*, 661 F.3d 1299,1301 (10th Cir. 2011). Moreover, it is telling, if not dispositive, that at sentencing neither Defendant nor his counsel expressed surprise that the sentence exceeded the Guidelines range; certainly neither said that the sentence contradicted what the court had said at the plea hearing. As we read the transcript of the plea hearing, Defendant clearly understood that the court could sentence him above the Guidelines range. His only remaining confusion, which was dispelled at the end of that hearing, was that somehow he could be sentenced for the 99.5 grams in addition to his sentence on the counts to which he pleaded guilty.

## III. CONCLUSION

We AFFIRM Defendant's sentence.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge