**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RODERICK DUSTIN JACKMAN,

    Defendant-Appellant.

No. 11-4129

(D.C. No. 2:09-CR-00581-TS-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **SKAVDAHL**, District Judge.[**]

---

Defendant Roderick Dustin Jackman admitted possessing over 600 images of child pornography on his personal computer during 2009. He pled guilty to one count of possessing such pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (prior version). The applicable guideline, U.S.S.G. § 2G2.2 (2009), resulted in a sentencing range of 78–97 months imprisonment, to be followed by a statutory minimum 5-year term of supervised release. The district court sentenced Defendant to 72 months imprisonment and a 10-year term of supervised release. On appeal

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Honorable Scott W. Skavdahl, United States District Judge for the District of Wyoming, sitting by designation.

Defendant claims (1) the Government breached the plea agreement by asking the district court to impose a life term of supervised release on him; and (2) the district court committed procedural error by failing to recognize its authority to categorically disagree with a guideline. Our jurisdiction arises under 18 U.S.C. § 3742. We consider each claim in turn, and summarily affirm.

I.

In the plea agreement, the Government agreed "[t]o recommend at sentencing that the Defendant be sentenced at the low-end of the range in the U.S. Sentencing Guidelines." At the plea hearing, the Government reiterated that in exchange for Defendant's guilty plea, the Government would "recommend that the Defendant be sentenced at the low end of the guideline range." Prior to Defendant's sentencing, the Government filed a response to Defendant's sentencing memorandum. Therein, the Government recommended a "Guideline sentence of 78 months, the low end of the properly calculated range, to be followed by supervised release for a term of life."

Defendant replied by claiming the Government's request for a life term of supervised release violated the plea agreement: "[T]he Government promised to ask for a sentence at the low end of the guideline range. In this case, the low end of the guideline range for supervised release is two years. [Defendant] asks the court to ensure the Government performs on its promise at sentencing." (internal footnotes omitted). The Government answered by explaining its low-end promise in the plea

2

agreement pertained only to Defendant's term of imprisonment and not his term of supervised release.[1]  The Government stated, however, that it "would not object to Defendant's motion to withdraw his plea, should he chose to file such motion, based on his misunderstanding of the terms of the plea agreement."

At the sentencing hearing, Defendant did not raise the issue of the alleged breach; nor did he move to withdraw his plea.  When the Government raised the issue, the court stated it would not rule on whether the Government's prior request for a life term of supervised release violated the plea agreement because Defendant had not renewed his objection.  The court told the Government that "[o]ut of an abundance of caution, you can argue for what [Defendant] wants you to argue for, because I'm going to impose what I think is necessary.  Okay."  The Government, consistent with the promise it made in the plea agreement, then asked the court "to sentence the Defendant to the low end of the guidelines."  Notably, the Government never argued for a life term of supervised release.

Given these undisputed facts, the Government does not appear to have breached the plea agreement.  But at worst, the Government cured the breach about which Defendant complains prior to his actual sentencing.  Defendant did *not* argue

_____

[1]  We note U.S.S.G. § 5D1.2(b)(2) (2009) provides for a term of supervised release of at least 2 years for a defendant convicted of a Class C sex offense felony. Defendant, however, was subject to a 5-year mandatory minimum term of supervised release under 18 U.S.C. § 3583(k) because he was convicted of a Class C felony pursuant to § 2252A(a).  Defendant fails to explain how the Government in this case could lawfully argue for a 2-year term of supervised release.

3

at his sentencing hearing that the Government's low end recommendation constituted a breach of the plea agreement, or that the Government's ultimate recommendation failed to cure any prior breach. The remedy Defendant sought in his prior written objection was for the Government to perform on its promise to recommend a sentence at the "low end of the guidelines." This is precisely what the Government did. But even assuming an uncured breach on the part of the Government, that breach was immaterial and meaningless because it did not affect the district court's sentencing decision. See United States v. VanDam, 493 F.3d 1194, 1202–03 (10th Cir. 2007) (suggesting an immaterial breach of a plea agreement does not warrant reversal); see also Black's Law Dictionary 1066 (9th ed. 2009) (defining "material" as "[o]f such a nature that knowledge of the item would affect a person's decision-making"). The court told the parties that, regardless of what the Government argued, the court would impose the term of supervised release on Defendant that it deemed most appropriate under the circumstances. In other words, the Government's earlier recommendation that the court sentence Defendant to a life term of supervised release had no bearing on the actual sentence Defendant received.

## II.

Defendant's second claim fares no better than his first. In his sentencing memorandum, Defendant argued the district court should decline to follow U.S.S.G § 2G2.2 because, in particular, two of its enhancements were not based on empirical data but rather arose from congressional revulsion to child pornography. Defendant

4

argued the enhancement for using a computer did not meaningfully distinguish between defendants: Sure he downloaded the images to his computer, but everyone guilty of possessing child pornography uses a computer. Defendant also argued the enhancement based on the number of images possessed was overstated: Sure he possessed over 600 images, but child pornography can be downloaded so quickly and easily that anyone can amass a large collection. The Government responded by reminding the court that it had the discretion to reject U.S.S.G. § 2G2.2 on the basis of a policy disagreement with the guideline, as some courts had done, but was "certainly not obligated to disagree with the guideline." The Government argued that because § 2G2.2 was "the result of careful work by both the Sentencing Commission and by Congress, . . . it is entitled to deference."

In pronouncing sentence, the district court addressed "the issue of the appropriateness of Guideline 2G2.2:"

> The Defendant . . . argues the guideline range is too high. The Defendant specifically takes issue with two enhancements applied in his case. First the enhancement for using a computer, and, second, the enhancement for the number of images possessed.
>
> The court would note that courts, including the Tenth Circuit, have found similar arguments to be, using the Tenth Circuit's language, quite forceful. [United States v. Regan, 627 F.3d 1348, 1354 (10th Cir. 2010)]. The court acknowledges the Sentencing Guidelines are not binding. However, the court also acknowledges that the two enhancements that Defendant takes issue with were either based on a specific direction from Congress or were created directly by Congress.
>
> The material submitted by the defendant tries to paint the picture of Congress doing so inappropriately. This court believes that it is well

5

established that the Congress of the United States has the constitutional power to act as it did.  And the court believes that it is necessary for it to give deference to Congress in these cases.

As Defendant does not directly object to the application of either enhancement [by challenging the applicable guideline range] and has acknowledged that the guideline range was correctly calculated, the court will consider the arguments as to the applicability or the appropriateness of Guideline 2G2.2 in its consideration of the 3553 factors.

According to Defendant, the statement "[a]nd the court believes that it is necessary for it to give deference to Congress in these cases," indicates the district court committed procedural error by treating U.S.S.G. § 2G2.2 as mandatory.

In Kimbrough v. United States, 552 U.S. 85 (2007), the Supreme Court held a district court has the discretion to vary from the recommended guideline range where the court determines such range is greater than necessary to achieve the sentencing objectives of § 3553(a).  Such a decision to vary may be based on a categorical disagreement with the applicable guideline apart from individualized consideration of § 3553(a)'s sentencing factors.  See United States v. Lopez- Macias, 661 F.3d 485, 489–90  (10th Cir. 2011).  A district court that fails to recognize its discretion to vary from the guideline range based on such disagreement with a guideline may commit procedural error.  See United States v. Henderson, 649 F.3d 955, 964 (9th Cir. 2010).

In this case, the court plainly acknowledged the guidelines are non-binding, and stated it would consider Defendant's "arguments as to the applicability or the

6

appropriateness of Guideline 2G2.2 in its consideration of the 3553 factors." The court's reference to our decision in Regan satisfies us the court understood it could reject a guideline based not only on an individualized assessment of the § 3553(a) factors, but also on the categorical view that a guideline, or some portion thereof, overstates the seriousness of an offense. That the district court here, after considering both parties' arguments and Tenth Circuit case law, believed "it [was] necessary for it to give deference to Congress in these cases" does not mean the court failed to recognize the scope of its discretion to vary from the guideline range resulting from application of U.S.S.G. § 2G2.2, and in particular its sentencing enhancements. Defendant argument rests entirely on the dubious assumption that the court understood the scope of its discretion under § 3553(a), but was unaware of the discretion it possessed under Kimbrough and its progeny—progeny extensively cited by both parties in their written arguments. For sure, the court may have misspoke when it said deference to § 2G2.2 was "necessary." Deference to the guideline was not strictly "necessary" in general terms. Yet given the court (1) understood the non-binding nature of the guidelines, (2) noted the forcefulness of Defendant's argument, (3) believed the guideline "appropriate" rather than binding, and (4) sentenced Defendant to 72 months, 6 months below the low end of the applicable guideline range, we believe the district court well understood the scope of its discretion and simply exercised that discretion by rejecting Defendant's challenge to the child pornography guideline *apart* from consideration of § 3553(a)'s sentencing factors.

7

See Gall v. United States, 552 U.S. 38, 51 (2007 (reviewing a sentence of imprisonment for abuse of discretion). "[T]he fact the court could have varied downward based on [a] disagreement with § 2G2.2 does not mean it was required to do so" under a categorical approach. United States v. Ilgen, 417 F. App'x 728, 736 n.8 (10th Cir. 2011) (unpublished).

For the foregoing reasons, the judgment of the district court is—AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge